WEST et al. v. HOUSTON OIL CO. OF TEXAS.

(Circuit Court of Appeals, Fifth Circuit. April 4, 1905.)

No. 1,381.

1. EVIDENCE—DECLARATIONS OF GRANTOR—DISPARAGEMENT OF TITLE.
   Declarations of a grantor, made in his own interest, after he had conveyed property in controversy, and in disparagement of the title so conveyed, are inadmissible in behalf of himself or his subsequent vendee, or in rebuttal of declarations against his interest tending to sustain the first conveyance.
   [Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 846.]

2. SAME—WITNESSES—CHARACTER.
   Where, in trespass to try title, the vital issue of fact was as to the genuineness of a deed, evidence of the character of the officer alleged to have taken the acknowledgment thereto was inadmissible on the issue of forgery.

3. SAME—REVIEW.
   Where an issue of fact in a civil case is tried by the court without a jury, and the court did not make a special finding of facts, as provided by Rev. St. § 700 [U. S. Comp. St. 1901, p. 570], the sufficiency of the facts found to support the judgment could not be reviewed.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

Hazlewood and J. A. Templeton, for plaintiffs in error.
J. F. Lanier and Thos. H. Franklin, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. This was the Texas statutory action of trespass to try title to land, brought by the Houston Oil Company of Texas, defendant in error, against Samuel A. West et al., plaintiffs in error, to recover land described in the petition. The pleadings are formal. By stipulation in writing, a jury was

waived, and the cause was tried by the presiding judge. The plaintiff offered the original grant to Jesse McGee for a league of land as a colonist in Lorenza De 'Zavala Colony, which grant embraced the land in controversy, and was issued October 23, 1835. Plaintiff then offered a deed from Jesse McGee and wife, dated the 7th of October, 1881, conveying the land sued for to C. P. Huntington, and successive mesne conveyances from Huntington to the plaintiff, with other proof not necessary to recite, and rested. Defendants (below, but for convenience styled defendants here) then offered a written instrument, which we copy in full, with the indorsements thereon:

"The Republic of Texas, County of Jasper. Be it known that on the 14th day of January, A. D. 1840, I, Jesse McGee, for and in consideration of the sum of one thousand dollars to me in hand paid by William Dobson, both of the republic aforesaid, the receipt whereof is hereby acknowledged, have granted, bargained and sold and by these presents do grant, bargain, sell, alien, convey and confirm in bona fide sale all that tract, lot or parcel of land containing four thousand, four hundred and twenty-eight acres and being the league of land granted to me, the said McGee, by George Anto Nixon, commissioner for the Empresario Lorenzo De Zavala, which said land is situated in Jefferson County, on Cabiceras Bayou and joining the land of Francis Valeres on the east, and for further description of said land reference is hereby made to the original plat and field notes of survey which are on file and of record in the general land office of this republic, and reference may also be had to the title papers, which are herewith handed to the purchaser. To have and to hold said bargained land and premises with all and singular the rights, rent, issue and appurtenances thereunto belonging or in any wise appertaining to the said Dobson, his heirs and assigns, and I, the said McGee, for myself, my heirs and assigns, the said bargained land and premises shall and will warrant and forever defend to the said Dobson, his heirs and assigns against the claim of all other persons.

"In testimony of which I have hereunto set my hand and seal ——— date above.                                        Jesse McGee. [Seal]

"Witnesses:
        "P. May and
        "Joseph Merary.

"Republic of Texas, County of Jasper. Personally appeared before me, Jesse McGee, who acknowledged he signed, sealed and delivered the annexed deed of conveyance to William Dobson for the purposes therein contained.

"Given under my hand and seal of office the Jny. 14th, 1840. Eighteen hundred forty.                                        Martin Palmer,
                        "C. J. C. C. and Ex-Officio Notary Public.
        "[Seal of Jasper County Court.]"

"[Indorsed as follows:] Jesse McGee to William Dobson. Deed. Filed for record Feb. 21, A. D. 1846. Recorded same day, book 'E,' pages 367 and 368. Fees $1 and 17/100. Alexander Caldry, Clk. Co. J. C.

"Filed in Newton County for record March 27th, 1871, at 8 o'clock a. m. G. J. P. Hardy, Clerk D. C. N. C.

"State of Texas, County of Newton. This is to certify that the foregoing deed was filed in my office to be recorded on the 27th day of March, 1871, at 8 o'clock a. m., and that the same has been duly recorded in book 'E' records of deeds in my office on pages 295 and 296. Given under my hand and the seal of the District Court, this 27th day of March, A. D. 1871.
                        "Gen. J. P. Hardy, C. D. C. N. C.

"Filed for record in my office on this the 28th day of March, A. D. 1871, at 5 o'clock p. m. John S. Goodrich, C. D. S. C.

"State of Texas, County of Sabine. This is to certify that the annexed deed was filed in my office for record on the 28th day of March, A. D. 1871, at 5 o'clock p. m., and was by me duly recorded in book K of the records of deeds for Sabine County on pages 331 and 332 at 6 o'clock p. m. same day.
                        "John S. Goodrich, Clk. D. C. S. C."

The defendants followed this up with mesne conveyances from Dobson to Lawrence, dated May 20, 1846, from Lawrence to Sheldon, dated 16th September, 1848, and from Sheldon to Samuel West, dated November 2, 1848, with proof that they (the defendants) were the heirs of Samuel West, and other proof not necessary to be recited here.

At some time during or before the trial, J. F. Lanier, as attorney for plaintiff, submitted his affidavit, in which, among other things, he stated:

"That a certain instrument, under which the defendants in the above entitled and numbered cause claim title to the land in controversy, a portion of the Jesse McGee league, lying and being in Sabine and Newton counties, Texas, and purporting to have been executed by Jesse McGee and William Dobson, and dated the ———— day of January, 1840, I believe was not executed by the Jesse McGee to whom the land sued for herein was originally granted, nor by his authority, but I believe said deed to be a forgery."

On December 18, 1903, the court rendered judgment which showed that the judge had concluded and adjudged that the law and facts are for the plaintiff, the Houston Oil Company of Texas, and against the defendants. On the next day, December 19, 1903, the defendants moved the court to allow them 42 days in which to file a petition for a new trial and to prepare defendants' bill of exceptions, which order was granted on that day; and defendants' counsel, in open court, requested the court to make out and file in said cause his findings of fact and conclusions of law, which he did on, to wit, the 21st day of December, 1903.

In Norris v. Jackson, 76 U. S., on page 127 (19 L. Ed. 608), Mr. Justice Miller says:

"The first thing to be observed in the enactment made by the fourth section of the act of 3d March, 1865, allowing parties to submit issues of fact in civil cases to be tried and determined by the court, is that it provides for two kinds of findings in regard to the facts, to wit, general and special. This is in perfect analogy to the findings by a jury, for which the court is in such cases substituted by the consent of the parties. In other words, the court finds a general verdict on all the issues for plaintiff or defendant, or it finds a special verdict. This special finding has often been considered and described by this court. It is not a mere report of the evidence, but a statement of the ultimate facts on which the law of the case must determine the rights of the parties—a finding of the propositions of fact which the evidence establishes, and not the evidence on which those ultimate facts are supposed to rest."

In the case we are considering the learned judge of the Circuit Court opens his statement of his findings of fact as follows: "In the above cause, a jury having been waived in writing by all the parties to this suit, I find the facts to be substantially as follows:" and then follow 27 specifications, covering a little more than five closely printed pages of the printed record. We here give, in whole or in part, certain of the specifications into which this special finding of fact is divided, to wit:

"(13) The other deeds introduced by the defendants, attempting to connect themselves with the title issued to Jesse McGee, describe the land substantially, as to location, as in the above-mentioned deed, purported to be from Jesse McGee to William Dobson.

"(14) All the title papers of the deeds were recorded in Jefferson county from the years 1840 to 1846, inclusive, and were never recorded in Sabine and Newton counties until 1871. Most of the land sued for is in Sabine county, the deed records of which county were destroyed by fire in 1874, and none of the deeds of the defendants were ever re-recorded in Sabine county."

"(19) I find that only one grant was made to Jesse McGee, so far as the evidence in this case shows, and that grant was made to the person under whom the plaintiff derains title."

"(23) I find that Martin Palmer's reputation in regard to land titles was bad, as that of a forger, and he is the party that purports to have taken the acknowledgment to the deed from Jesse McGee to William Dobson."

"(25) I find that there was but one Jesse McGee, and he was the party that conveyed the land under whom the plaintiff claims. I find that, when he sold the land to the persons under whom plaintiff gets its title, that Jesse McGee was in actual possession of the land, and had in his possession at that time a certified copy of the original Spanish grant to him, and delivered it to the purchaser at the time, and that said certified copy is a true copy of the only grant ever made to Jesse McGee, so far as the testimony in this case shows."

"(27) I find that the plaintiff and those under whom it claims title were innocent purchasers for value, without notice. The only thing to place them upon notice was the recording of the instrument under which the defendants claim title—that is, the supposed grant to Jesse McGee, above referred to, and which is spurious—and the deed from Jesse McGee to Dobson, and Dobson to Lawrence, when in these conveyances and the field notes of said Spanish grant the land therein described is said to be twelve miles west of the Neches river and three miles south of Pine Island, and said grant and deeds describe it as being in Jefferson county, Texas. The grant to Jesse McGee describes the land as a timber tract, and Sandy creek running through it, and has trees for corners or bearing trees, and in truth and in fact the land sued for and that conveyed to the plaintiff is a timber league in Sabine and Newton counties, Texas, and is more than 100 miles from Jefferson county. The defendants' title shows that theirs was a prairie league, and was in Jefferson county, Texas, twelve miles west of the Neches river, and three miles from Pine Island; and the Neches river and Pine Island being well-known and fixed objects, and the plaintiff's title calling for a timber league more than 100 miles from Jefferson county, and not west of the Neches river, but east of the Neches river, and, in addition thereto, east of the Angelina river, and it further being shown that the plaintiff and those under whom it claims paid a valuable consideration for the said land, and without notice of the defendants' claim, unless the record of the Spanish grant under which defendants claim, and the deeds under which defendants claim, would constitute notice, I find that such recordation did not constitute notice to plaintiff, and that plaintiff was a purchaser for value, without notice. I find that Jesse McGee had not previously sold this league of land, and the proof offered by the defendants was of an unsatisfactory and loose character, consisting of declarations said to have been made by Jesse McGee, and that he had previously sold the land. I do not believe this evidence, because it is unreasonable that a party would sell land, and then take possession of it, and advertise to the world that he had sold his property, when at the same time he was claiming it and attempting to sell it. If this conclusion is incorrect, then I find that the plaintiff and those under whom it claims had no notice of such sale, if it was ever made, except the record of the defendants' title, as above stated, and that the same did not constitute notice.

"I would suggest that the original deed from Jesse McGee to William Dobson and the Spanish grant under which the defendants claim be sent up as a part of the record in this cause for the inspection of the appellate court.

"Upon these findings the only conclusion of law is that the law is with the plaintiff, and that judgment be entered in favor."

When the defendants had rested in their offerings of evidence, the plaintiff called a witness (T. W. Ford) who lived in the town of Jasper, Jasper county, Tex., in 1887, and was then, and had for some years prior thereto been, engaged in purchasing pine lands in that section

of the country for C. P. Huntington, W. S. Herndon, and other parties. He testified that he knew Jesse McGee in 1887; he purchased either the east half or the west half of the McGee league, in Sabine and Newton counties, 'for Col. Herndon, and he paid therefor the consideration named in the deed to Herndon. When this testimony was offered by the plaintiff, it was objected to by the defendants' counsel, whereupon the plaintiff's counsel made the following statement to the court, namely: "It goes to the question of the assertion of title to the entire league." Defendants' counsel then objected to the evidence because this sale to Herndon was made in 1887, while the sale to Huntington, under whom plaintiff claims, was made in 1881. They objected further to any evidence tending to prove the payment of a valuable consideration, for the reason that such evidence was irrelevant and immaterial, and could only be offered for the purpose of showing that plaintiff and those under whom it claims were innocent purchasers for value, without notice of defendants' claim, and, if that be true, it would only be an equitable title, such as could not be asserted in a court of law. They objected, further, that such evidence was irrelevant and immaterial, because their title papers had been recorded in Sabine and Newton counties, when Ford purchased the land from McGee, and such records would be constructive notice to the party making such a purchase, which objections the court overruled, and the witness was allowed to testify that when he bought this land for Col. Herndon he did not know of any adverse claim to it. He knew Jesse McGee. He went to his house. He (McGee) was living on this league of land at the time witness purchased it. Witness never wrote a letter to Jesse McGee and stated to him that on account of any defect or for any reason he could come back from Denton county and become the owner of this land again. Witness had known Jesse McGee since about 1880. He knew D. J. Henderson, who is now dead. Thinks he (Henderson) let McGee have some money, and afterwards bought the land from McGee, and then witness bought from Henderson, perhaps for Herndon. Witness saw McGee execute some instruments. McGee could not write or sign his name. He always signed by marks the deeds that he made, that witness took for him to sign. He said that he could not sign his name, and made his mark. Witness does not know whether he signed for McGee, or the notary signed for him. He made his mark, and witness thinks his wife also signed by her mark. McGee lived some 20 miles from Jasper, Tex. Witness bought from him at two different times the whole league of land, except 200 acres that he reserved as a homestead. Witness does not think that he ever knew of any one having written McGee from Jasper county concerning the title to the land. Does not think he ever asked anybody about the title to it. He says he bought thousands of acres of land in that vicinity, and went to see McGee, and bought this land. Witness was raised in Newton county, and knew the country pretty well. He lived in that county until 1880. Before he bought this land from McGee he knew that defendants' title papers were on record in Newton county. He examined the records before making the purchase, and said:

"I knew there was a title on record in Newton county prior to that for a league of land in Jefferson county. Of course, I know what the records con-

tained. I want to say, in connection with that, that it did not occur to me that a conveyance of land in Jefferson county conveyed land in Newton county. I remember there was a deed to some one—purporting to be from Jesse McGee to somebody—to a league of land situated near Pine Island Bayou, I think. I followed it from its origin down as far as the records show."

The witness here identified a certified copy from the General Land Office of the protocol of the Jesse McGee league of land. This instrument was in Spanish, was dated June 12, 1839, and it was made by John P. Borden, Commissioner of the General Land Office. Witness said he first saw this instrument in the hands of Jesse McGee, and that McGee delivered it to him with the deed to the land. The witness was then asked the following question:

"Q. Did you every say anything to Jesse McGee, at or about the time you purchased the land from him, about this alleged Jefferson County deed? A. Yes, sir; I did. Q. Well, what did you say to him?"

When this testimony was offered, defendants' counsel objected to the same because the proposed testimony was hearsay, and a declaration made subsequent to the date of the defendants' grant and in disparagement of defendants' title, and was self-serving, and was made in the interest of the declarant, and was irrelevant and immaterial, and was wholly disconnected with any declaration offered by the defendants. The court overruled the objections and admitted the testimony on the question of purchase in good faith, but stated that he did not admit it as a declaration tending to show that he still had the title, or anything of the kind, to which ruling of the court the defendants then excepted, and urged the following additional objection to the testimony, namely:

"That the issue of purchase in good faith cannot be made on the law docket. It must be made in an equity suit, and in this case it is wholly irrelevant and immaterial, and self-serving declaration."

This objection was also overruled, and the witness was permitted to answer as follows:

"I spoke to him about the record I saw there. Of course, it did not occur to me as a legal proposition, and I did not think it was the land up there; but, being the same name, and seeing these deeds recorded in Newton county, when it seemed they should have been recorded in Jefferson county, caused me to ask him about this. I told him about the record, and asked him about the deed, and he said he knew nothing about it; and I asked him if he had ever conveyed any league of land to anybody, and he said he did not know anything about it, and that it was the first he had ever heard of it, and that he did not know that there was any such deeds on record, and that he had never made any such conveyance as that; and it occurred to me there was some other tract conveyed down there, I did not know."

To which rulings of the court and admission of testimony defendants duly excepted, and reserved their bill.

The plaintiff also offered to prove by D. W. O'Brien that he had heard of Martin Palmer, who resided in Jasper county in 1840, and that he had heard his general reputation for honesty discussed. To the admission of this evidence, defendants' counsel objected when it was offered, because it was irrelevant and immaterial. Thereupon plaintiff's counsel stated that it was offered on the question

of forgery, and he then propounded to witness the following ques-
tion: "Q. What was his general reputation, if you know, with re-
gard to forging land titles, or other crookedness in connection with
land titles?" To the testimony thus sought to be elicited the de-
fendants made the additional objection that the question was not
confined to the time the deed from McGee to Dobson was made, and
does not show where the reputation was. Thereupon plaintiff's
counsel supplemented their question as follows, namely: "Q. Well,
generally, throughout this section of the state, and in Jasper coun-
ty?" The court overruled the objection, and admitted the testi-
mony as bearing on the question of forgery, and the witness then
testified, over objection, as follows, namely:

"I came to Texas in 1840, and I knew but little about this section of the
country until I returned to it in 1852. I was clerk of the district court for
two years, beginning in '54, and clerk of the county court for six years, be-
ginning with '56 and ending in '62. I don't know that I ever saw Mr. Palmer,
but I heard of him frequently. I have heard of Mr. Palmer during the period
of my residence here, from '52 up to the present time, quite frequently. I
learned by the records and from hearsay that he was a member of the board
of land commissioners of Jasper county; that there were a great many
frauds perpetrated by that board, of which he was president, I think. Q.
You mean fixing up forged titles? A. Well, the character I heard of him
was with respect to land matters. Q. That was his general reputation? A.
Yes, sir. Q. You have heard his character discussed in that respect, then?
A. Yes, sir; a good deal. Q. Well, is it, or not, a fact that all you heard of
him was bad? (Defendants objected to this question as leading.) A. I don't
know whether I could state that, or not. I might have heard somebody
speak favorably of him. Q. You do state that you have heard that there
were a great many frauds perpetrated by him while a member of the land
board? A. I have heard that there were a great many fraudulent land cer-
tificates. Q. Is it not a fact that another board ₑwas appointed to investigate
the acts of that board? (Objected to by defendants' counsel as irrelevant,
immaterial, and hearsay.) A. That is a matter of history, I think. The
Court: What do you mean by a 'matter of history'? A. I think the records
of the legislative bodies of the state will show that fact."

To the ruling of the court in overruling the objections and ad-
mitting the testimony as above set out, the defendants excepted and
reserved their bill. On cross-examination by defendants' counsel,
the witness testified that he came to Texas in 1849. Never saw
Palmer in his life. He believed that, when he came to Texas, Pal-
mer lived in Leon county. Thought that the land board of which
Palmer was a member was not then in existence. All he knew
about Palmer's connection with it was from the records and from
hearsay. After coming to Texas in 1849 he lived at Bolivar Point
until 1852, when he moved to Beaumont, where he has since re-
sided. He had heard Palmer's reputation discussed in Jasper
county after 1849. Could not say whether it was in the 50's or
60's, but it was before and after the Civil War, and it was after
witness moved to Beaumont. Had heard that reputation discussed
by his neighbors and acquaintances, both individually and as a mem-
ber of the board. "Q. What did you say that reputation was?
A. As far as land matters were concerned, it was bad, as far as
I heard it or knew it. Palmer was generally reputed to have been
chief justice and ex officio notary public of Jasper county in 1840."

The witness said he had no connection with the title to the McGee league, nor with the plaintiff.

That the evidence objected to may be seen in its proper setting, we have recited almost literally the whole of the testimony of these witnesses. The counsel for the defendants correctly states the law as to the admission of Ford's testimony:

"That declarations of a grantor, made in his own interest, after he had once conveyed the property in controversy, and made in disparagement of the title as conveyed, are inadmissible, either in his own behalf, or in behalf of his subsequent vendees, to affect such prior conveyance, is an elementary proposition. That such declarations are not admissible, even in rebuttal of declarations of such grantor against his interest, tending to sustain the first conveyance, and made by him subsequent thereto, which declarations have been introduced in evidence by the parties holding under such conveyance, is equally well settled."

Hays v. Hays, 66 Tex. 607, 1 S. W. 895; Snow v. Starr, 75 Tex. 412, 12 S. W. 673; Ætna Insurance Company v. Eastman, 95 Tex. 34, 64 S. W. 863; 1 Greenleaf, Evidence (16th Ed.) §§ 147, 148, 152, 153, 189.

We think he also correctly states the law with reference to the other witness, wherein he says:

"It seems to be a rule of almost universal application in civil actions that the good or bad character of one whose reputation is not made an issue therein should be excluded, as irrelevant and immaterial. And this is true whether such party whose character is sought to be inquired into be or be not a party to the action. The improper admission of such evidence creates a false issue in the case."

Redus v. Burnett, 59 Tex. 576; Rankin v. Busby (Tex. Civ. App.) 25 S. W. 678; McElroy v. Phink (Tex. Sup.) 76 S. W. 753.

We must hold, therefore, that the testimony of those witnesses which was objected to was inadmissible, and the admission of it over the objections was such error as requires the reversal of the judgment. From the nature of the action, and the character of the documentary evidence offered by the respective parties, it is clear that the vital issue of fact involved in the controversy was as to the genuineness of the deed dated January 14, 1840, purporting to be executed by Jesse McGee, and to convey to William Dobson the league of land granted to McGee by George Antonio Nixon, commissioner for the Empresario Lorenza de Zavala, and for further description making reference to the original plat and field notes of survey which are on file and of record in the General Land Office of the republic. It sufficiently appears from the findings of fact made by the judge that this is the controlling, if not, in substance, the only controverted, question of fact in the case. A reference to Rev. St. U. S. § 700 [U. S. Comp. St. 1901, p. 570], as construed in the cases of Norris v. Jackson, 9 Wall. 125, 19 L. Ed. 608; Miller v. Life Insurance Company, 12 Wall. 285, 20 L. Ed. 398; Insurance Company v. Folsom, 18 Wall. 237, 21 L. Ed. 827; Cooper v. Omohundro, 19 Wall. 65, 22 L. Ed. 47; Martinton v. Fairbanks, 112 U. S. 670, 5 Sup. Ct. 321, 28 L. Ed. 862; and City of Key West v. Baer, 66 Fed. 440, 13 C. C. A. 572—will show to counsel engaged in this case why we cannot extend our review further.

The judgment of the Circuit Court is reversed, and the cause is remanded to that court, with directions to award the defendants a new trial.