NILES et al. v. HOUSTON OIL CO. OF TEXAS et al.　(No. 1404.)*

(Court of Civil Appeals of Texas.　Beaumont. Nov. 9, 1926.　Rehearing Denied Dec. 1, 1926.)

1. Appeal and error ⟨key⟩1099(8)—Supreme Court's instruction that question of adverse possession was for jury became law of case.

Supreme Court's instruction to trial court that question of adverse possession was for jury became law of case on subsequent appeal.

2. Adverse possession ⟨key⟩106(4)—Parties who perfected title by adverse possession own land.

Parties who perfected title by adverse possession own land, and do not rest under burden of proving subsequent occupancy.

3. Evidence ⟨key⟩471(27)—Witness could testify that claimant by adverse possession occupied land continuously as against contention that testimony was a conclusion.

Witness who qualified might testify that claimant of land under adverse possession occupied land continuously as against contention that such testimony was a conclusion of witness.

4. Appeal and error ⟨key⟩1050(1)—Admission of evidence of continuous occupancy of land by adverse claimant, if error as conclusion, held harmless, in view of subsequent similar evidence.

Admission of testimony that claimant of land by adverse possession occupied it continuously, if error as being conclusion of witness, held harmless, when adverse party later permitted introduction of similar evidence without objection.

5. Acknowledgment ⟨key⟩16—Notary appointed by president of Republic of Texas held authorized to acknowledge deed.

Notary public duly appointed by president of Republic of Texas, who served as such during 1841, held authorized to acknowledge deed, in view of presumption that facts authorizing his appointment existed.

6. Evidence ⟨key⟩372(7)—Admission of certified copy of deed executed in 1841 held sufficient to raise issue of its genuineness.

Admission of certified copy of deed executed in 1841 held sufficient, without other evidence of due execution, to raise issue of execution and genuineness of original deed.

7. Deeds ⟨key⟩193—Plaintiffs must show forgery of deed executed in 1841 after introduction of certified copy thereof.

Plaintiffs held to have burden of proving forgery of deed executed in 1841, where defendants introduced certified copy thereof in evidence, thereby making prima facie case for its genuineness.

8. Deeds ⟨key⟩53—Evidence of forgery of deed executed in 1841 held insufficient to take such issue to jury.

Evidence of forgery of deed executed in 1841, certified copy of which was in evidence, held insufficient to take such issue to jury.

9. Deeds ⟨key⟩207—Evidence that grantee had bad reputation as forger had no probative force in proving that deed was forgery.

Evidence that grantee in deed, executed in 1841, had bad reputation as land forger and dealer in forged land titles held to have no probative force in establishing such deed as forgery.

———

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction February 2, 1927.

**10. Deeds ☞207—Small consideration for deed from grantor held no evidence of forgery of deed under which he obtained land.**

Small consideration for deed from grantor *held* not to constitute evidence of forgery of deed executed in 1841, under which he acquired land.

Appeal from District Court, Hardin County; J. M. Combs, Judge.

Action by Horace Wold against the Houston Oil Company of Texas and others, in which Edith L. Niles and others intervened. Judgment for defendants, and interveners appeal. Affirmed.

W. D. Gordon and Thos. J. Baten, both of Beaumont, for appellants.

Kennerly, Williams, Lee & Hill, of Houston, and A. L. Bevil, of Kountze, for appellees.

· WALKER, J. This is the second appeal in this case. On the first trial judgment was instructed for the appellees herein. This court, in an opinion by Judge Brooke (Niles v. Houston Oil Company, 191 S. W. 748), reversed the trial court and rendered judgment for appellants. Reviewing Judge Brooke's opinion, the Commission of Appeals, in an opinion by Judge McLendon (255 S. W. 604), reversed the judgment of this court, and remanded the case for a new trial. In approving Judge McLendon's opinion, Judge Cureton said:

"We approve the holding of the Commission of Appeals on the question discussed in its opinion."

The opinions of both appellate courts give the evidence in full detail; in fact, giving all the evidence on the issue of ten-year limitation, and detailing the chains of title under which the parties held. All objections urged by each against the other's title were fully discussed by the Commission of Appeals, with an announcement of the law controlling the facts upon another trial.

By its opinion, the Commission of Appeals sustained the contention of appellants that they held under a complete chain of title, regular in all respects, from the original grantee to themselves, but in doing so offered the following criticism against appellants' claim:

"The instant case presents a state of facts which appeal strongly to one's natural sense of equity and justice. The plaintiffs and those under whom they claim appear to have withheld from the records of the county in which the land was situated the evidences of their title from 1836 to 1891, thus leaving the lands to be dealt with by other parties claiming under subsequent deeds from their original grantor. It would seem that the security of land titles would demand that one dealing with the title should be protected after so long a time from an outstanding title emanating shortly after the original grant was made and withheld from the record for nearly a half a cen-tury, the probability of discovery of the existence of which was left entirely to the barest chance or accident."

Also the Commission of Appeals sustained the regularity of all links in the chain of title under which these appellees hold, except the deed from the original grantee, G. W. Brooks, to E. O. Le Grande, which purported to be junior to the deed from Brooks under which these appellants hold. Quoting from the opinion of the Commission of Appeals:

"Deed from George W. Brooks to E. O. Le Grande, dated February 24, 1841. This deed was proved by copy from the records of the judicial county of Menard, certified by the county clerk of Tyler county. Plaintiffs filed an affidavit of forgery to this deed. The original of this deed was not offered in evidence, and no affidavit of loss or inability to produce was filed, and no evidence offered attempting to excuse production of the original; neither was the certified copy filed among the papers of the case three days before the trial. The certified copy was objected to on the ground that no predicate was laid for the introduction of secondary evidence, and on the further ground that the deed was not acknowledged before an officer authorized to take acknowledgments, so as to bring the record thereof in the unconstitutional judicial county of Menard within the validating act of 1844 hereinafter referred to. The objections were overruled."

It was held that the trial court erred in receiving the certified copy of the Brooks-Le Grande deed, on the ground that no predicate had been laid for its introduction, but overruled the objection "that the deed was not acknowledged before an officer authorized to take acknowledgments." As we understand this last holding, it goes only to the extent that a deed acknowledged before a notary public was duly acknowledged under the law as it existed at that time. It was shown on the former trial that the appellees held under one John P. Irvin, and on this holding they base their claim of innocent purchaser. Disposing of this issue, the Commission of Appeals said:

"The testimony was undisputed that Irvin, who was a resident of Chicago, Ill., paid the consideration expressed in his deed, which was the full value of the land at the time, and that he had no knowledge or notice of the outstanding title of plaintiffs; which was not recorded in Hardin county until 1891."

The Commission of Appeals reviewed fully the facts relied upon by these appellees to sustain their plea of ten-year limitation; in fact, all the evidence on that issue is set out in the opinion of Judge Brooke. Discussing the effect of that evidence, the Commission of Appeals said:

"The evidence of adverse possession, as supporting the plea of limitation under the ten-year statute rests entirely upon the testimony of one S. A. J. Hare, who attorned in 1883

to E. H. Irvin, defendants' then predecessor in title. Hare's testimony is set out in full in the opinion of the Court of Civil Appeals, and need only be stated briefly here. Aside from the objections to its sufficiency hereinafter considered, we are clear in the view that it was sufficient to carry the case to the jury; but we do not think it is of such conclusive character as to support a directed verdict for defendants."

From our analysis of that opinion, we understand that two issues of fact, and only two issues of fact, were raised against appellees' right to hold the land, and that the case was reversed for these facts to be determined by a jury. Under the last quotation from that opinion, it was necessary for appellees to have a jury finding on their plea of ten-year limitation, and that the Le Grande deed was not a forgery. On this last issue, it was said:

"If the record shows a regular chain of title from the original grantee to the defendants, the trial court's judgment, therefore, must be sustained on their plea of innocent purchasers."

Under the trial from which this appeal is prosecuted, appellees again offered the evidence of the witness Hare, whose testimony was as strong in their favor as on the first trial, appellees say stronger, together with other facts which they say corroborated Hare's testimony. We do not review these additional facts, because the Supreme Court directly held that Hare's testimony was sufficient to raise the issue of limitation and sustain a jury's finding in favor of appellees. That issue was properly submitted to the jury, and was answered in appellees' favor, and judgment followed granting the land in controversy to appellees.

[1] Against this verdict, appellants advance the following proposition:

"Appellees as a matter of law failed to establish title by limitation."

For the reasons stated, we must overrule appellants' contention. The Supreme Court having instructed the trial court that Hare's testimony raised that issue in favor of appellees, such instruction became the law of this case. We do not restate Hare's testimony, as it is fully set out in the opinions on former appeal, to which we here make reference.

Appellants' contention that as a matter of law this evidence was insufficient to carry the issue to the jury was made on the former appeal, and overruled, and both they and we are bound by that ruling.

[2-4] Appellees, on this trial, offered evidence of an occupancy subsequent to the holding under Hare. This evidence is analyzed and criticized by appellants. We do not go into these issues, for the reason that they are immaterial. Having perfected a title under the Hare occupancy, as found by the jury, whose verdict we sustain, appellees own the land, and do not rest under the burden of proving a subsequent occupancy.

In attempting to prove their pleas of limitation, appellees offered Mr. John Henry Kirby as a witness, who, after testifying to his long connection with this land, and his intimate knowledge of the use and occupancy to which it had been put by him and his associates, testified as follows:

"After the sale of this land by the Texas Pine Land Association to the Houston Oil Company of Texas, in 1901, the possession and use of said land was continued by the Houston Oil Company of Texas by its lessee, the Kirby Lumber Company and the land has continuously been so used to the present date, including the main line railroad, or tramroad, that was constructed across the land in, 1896 or 1897.

"The Texas Pine Land Association claimed the land continuously from the date of its purchase from John P. Irvin, and exercised the right of ownership continuously thereafter as above described and in all respects until its sale in 1901, to the Houston Oil Company of Texas, which latter company has continued to claim and use the land occupying it with tramroads, and with timber camps."

Against this quoted evidence, appellants advance the following proposition:

"On the issue of limitations, it was error to permit a witness to testify as a legal conclusion and opinion that appellees and their predecessors in interest were continuously in possession of the land in controversy, because such statement was a legal conclusion."

If we understand appellants' contention, these objections go only to the point that the witness could not testify that the possession and use were continuous. The evidence offered was not subject to the criticism urged.

Under the authorities, occupancy is not "a legal conclusion and opinion" of the witness, but an issue of fact, the burden of which is carried by the limitation claimant. In Taylor v. Dunn, 108 Tex. 339, 193 S. W. 664, it was held that the burden was on the claimant under the limitation statute, "to show continuous occupancy of the land," and in Woods v. Hull, 90 Tex. 229, 38 S. W. 165, that "a party who claims by adverse possession must prove a continued actual possession for the period prescribed by law." See, also, Field v. Field, 39 Tex. Civ. App. 1, 87 S. W. 728, and Olcott v. Squires (Tex. Civ. App.) 144 S. W. 314, where the identical issue was before the court.

But without objection appellants permitted this witness to testify as follows: "This use has been continuous from day to day," etc., and they, themselves, on cross-examination of the witness J. B. Lindsey, elicited the fact that from 1900 (the year before the Houston Oil Company of Texas bought the land) until the time this suit was filed that the tramroad across the Brooks league "was used every day six days in the week by a motor.

car, run a car over it." If the court erred in receiving the evidence objected to—but his ruling on that issue was not error—in view of the well-established rule that a party cannot complain of the admission of evidence over his objections and exceptions, if he later permits similar evidence to be introduced without objection, the ruling of the court was harmless. Field v. Field, supra; Hendrix v. Brazzell (Tex. Civ. App.) 157 S. W. 280; Railway Company v. Sherer (Tex. Civ. App.) 183 S. W. 404.

We might well rest the disposition of this appeal upon what we have said on the issue of limitation, since under the verdict of the jury on that issue appellees must hold the land. But they also went to the jury on the issue of "a regular chain of title from the original grantee," as directed by the Commission of Appeals, which issue was submitted as follows, and answered as indicated:

"Special issue No. 1. Do you find from the evidence that George W. Brooks, the original grantee of the land in controversy, did or did not execute the deed from George W. Brooks to E. O. Le Grande of date 24th day of February, 1841?

"Let your answer be 'He did,' or 'He did not,' as you may find the fact to be from a preponderance of the evidence.

"In this connection you are instructed that the certified copy of such instrument from the records which has been introduced in evidence is not, standing alone, sufficient proof of the execution of such instrument by the said George W. Brooks.

"But to enable you to answer the foregoing questions you will consider all the facts and circumstances in evidence in connection with the copy of the deed from the records, and from all the evidence determine whether or not the said George W. Brooks did in fact execute such deed."

The Commission of Appeals overruled all objections to the admission of the certified copy of the Brooks-Le Grande deed, and directed that it be received as evidence, provided appellees could lay a proper predicate. That point is not made on this appeal. Quoting appellants' concession:

"It was agreed that Mr. Richter, the land and tax commissioner of the Houston Oil Company of Texas, had made a proper search and could not find original deed from George W. Brooks to Edwin O. Le Grande, purported to be dated February 4, 1841, and the affidavit of Mr. Lee, of counsel for appellees, was to the same effect."

[5] The Commission of Appeals held that the original deed, being acknowledged before a notary public, was properly admitted to record. It does not appear that the issue of William Myers' right to act as a notary public was an issue on the former appeal. Appellants on this trial sought to raise an issue against the official character of William Myers as a notary public, and they say that the evidence shows that he was not a notary.

We overrule this contention. The evidence shows that he was duly appointed by the president of the Republic of Texas, and duly confirmed for a period that covered the time during which this deed was executed, and that he took acknowledgments to other deeds during that time. Under the law, the president had the right, on a showing of certain facts, to appoint more than one notary for Jasper county; appellants' point being that the president had the right to appoint only one notary, and, having made such appointment, his authority was exhausted, and the appointment of Myers, if made, was void. Having made the appointment, which was duly confirmed, a presumption arises that the facts authorizing the appointment existed.

But, if it could be said that the evidence was sufficient to raise an issue against the official character of Myers, that issue was settled against the contention of appellants by the jury when they found that the Brooks-Le Grande deed was genuine.

[6] This conclusion puts the certified copy of the Brooks-Le Grande deed in the record for the consideration of the jury. But appellants say that, as against their affidavit of forgery, appellees had the burden of proving the due execution of the deed, which burden they did not meet, and, in fact, they say appellees offered no evidence thereon other than the mere introduction of the certified copy of the deed, while they say they offered evidence sufficient to show that the deed was a forgery. The certified copy of the Brooks-Le Grande deed, being properly admitted in evidence, raised the issue in appellees' favor that the original was genuine. In Emory v. Bailey, 111 Tex. 337, 234 S. W. 660, 18 A. L. R. 901, Judge Greenwood, speaking for the Supreme Court, said:

"We hold that where an instrument was duly recorded soon after its date and has remained of record for more than thirty years, and where nothing is disclosed upon its face as recorded to impeach its genuineness, article 3700 of the Revised Statutes requires that a certified copy thereof be admitted in evidence, under the statutory affidavit, filing, and notice of filing, without the necessity of further proof of the original's execution or genuineness."

"The gist of the decision in Brown v. Simpson's Heirs, supra, is that no further proof of the original's genuineness should be exacted, to render admissible a certified copy of a deed duly recorded for more than thirty years, unimpeached by anything appearing on the face of the record, than is furnished by the deed's authentication for record and by the ancient record. See, also, Holmes v. Coryell, 58 Tex. 687; [Galveston, H. & S. A.] Railway Co. v. Stealey, 66 Tex. 470, 1 S. W. 186; Schunior v. Russell, 83 Tex. 95, 18 S. W. 484; Wacaser v. Savings Bank (Tex. Civ. App.) 172 S. W. 738."

In Holmes v. Coryell, 58 Tex. 689, it was said by Judge Stayton:

"The certified copy of the deed, coming surrounded with such facts, was properly admit-

ted in evidence, for under the common-law rules of evidence the deed would prove itself; and under given circumstances the statute of this state, as before said, declares that 'a certified copy of the record of any such instrument shall be admitted in like manner as the original could be.' When offered, being more than thirty years old, it stood as would a deed of less age after it had been proved by one or more of the subscribing witnesses, and upon those who sought to attack its genuineness rested the burden of proof. Starkie on Evidence (920) 592."

In Railway Company v. Stealey, 66 Tex. 471, 1 S. W. 187, it was held:

"The custody of the deed being sufficiently accounted for in the affidavit of its loss, the proof of the facts above recited would entitle the plaintiffs to introduce in evidence a copy, and would also be sufficient, in the absence of any countervailing evidence, to establish the genuineness of the paper."

And Judge Stayton again, in Stooksbury v. Swan, 85 Tex. 568, 22 S. W. 965, said:

"The ultimate weight to be given to a deed admissible because proved in the one manner or the other [by witnesses or by certified copy], so far as the question of genuineness goes, when there is a conflict of evidence as to this, must be determined by the jury. * * *

"If on proper and uncontroverted testimony a deed be admitted as an ancient instrument [or a certified copy be duly admitted] then, in the absence of evidence, subsequently admitted, tending to show that it is not genuine, a court might, without violation of the statute, instruct a jury to consider the execution of the instrument proved."

We think the certified copy of the ancient record of the deed from Brooks to Le Grande, dated February 24, 1841, and recorded February 23, 1842, was properly admitted in evidence, and that no other evidence was necessary to raise the issue of the execution and genuineness of the original deed.

[7] Appellants' third proposition is as follows:

"It was the duty of the court, upon seasonable request, to charge the jury that the burden was upon appellees to establish the fact that Brooks, the original grantee, had made the junior deed to Le Grande."

And a special charge was requested placing the burden of this issue upon appellees.

On the facts of this case, we do not think this proposition sound. Appellees fully met and discharged the burden placed upon them by law, when they established facts admitting in evidence the certified copy of the Brooks-Le Grande deed, and the burden of proof was fully submitted by the charges given. In other words, we think the introduction in evidence of the certified copy of that deed made a prima facie case for its genuineness, and cast upon appellants the burden of establishing their plea of forgery by the production of lawful and competent evidence.

The quotation given by us, supra, from Emory v. Bailey, is in point on our proposition.

In Cox v. Cock, 59 Tex. 524, the defendants filed an affidavit attacking the deed in issue as a forgery. The court held that the burden to prove such a deed was a forgery rested upon the defendants. After filing the affidavit of forgery, the defendants offered no evidence. The verdict and judgment were for the plaintiffs. In that case the court charged directly that, after the instrument was received in evidence, the burden was upon the party attacking it to show that it was a forgery. Discussing that charge, it was said:

"The charge, then, must be read with reference to the exact case being considered by the court. When it was given the evidence had all ceased; no more proof could be received. The appellee had been compelled, under the operation of the plea of non est factum, to introduce affirmative proof of the execution of his deed. The court required this of him. The appellants saw fit to introduce no evidence whatever in support of their plea of non est factum. Under the circumstances of the case, as thus presented, the charge was not erroneous, nor was it, as the appellants had introduced no proof in support of their plea, calculated in any manner to mislead the jury."

In Holmes v. Coryell, it was said:

"The certified copy of the deed, coming surrounded with such facts, was properly admitted in evidence, for under the common law rules of evidence the deed would prove itself; and under given circumstances the statute of this state, as before said, declares that 'a certified copy of the record of any such instrument shall be admitted in like manner as the original could be.' When offered, being more than thirty years old, it stood as would a deed of less age after it had been proved by one or more of the subscribing witnesses, and upon those who sought to attack its genuineness rested the burden of proof. Starkie on Evidence (920) 592."

The oft-cited case of Houston Oil Company v. Kimball, 103 Tex. 102, 122 S. W. 536, clearly holds that the admission of a certified copy "was prima facie evidence before the jury" of the due execution of the original.

In Houston Oil Company v. Village Mills Company, 241 S. W. 132, it was said by the Commission of Appeals:

"That the age of the deed, its prompt record, etc., constituted prima facie proof of its delivery and shifted the burden on the Village Mills Company to show that it was a forgery."

[8] In view of what we have said as to the effect of the admission of the certified copy of the Brooks-Le Grande deed, it was the duty of the court to instruct a verdict for the appellees, unless appellants tendered evidence sustaining their plea of forgery. As said by Judge Stayton in Stooksbury v. Swan:

"If on proper and uncontroverted testimony a deed be admitted as an ancient instrument, then, in the absence of evidence, subsequent-

ly admitted, tending to show that it is not genuine, a court might, without violation of the statute, instruct a jury to consider the execution of the instrument proved."

Under the foregoing proposition, it is our conclusion that the evidence relied on and offered by appellants to raise the issue of forgery was without probative force, and, as a matter of law, could have been disregarded by the trial court. As we understand this record, the only evidence relied upon by appellants to raise the issue of forgery was:

(a) An attempt to show that William Myers, who acknowledged the original, was not a notary public. In our judgment that issue was not raised.

[9] (b) "It was proved that both E. O. Le Grande and David Brown had a bad reputation as land forgers and dealers in forged land titles, and that this reputation was general in the community in which they both lived. J. H. Brooks, Jane E. Jones, N. W. Ware. It was also shown that David Brown's real name was Robert Stephens; that he left South Carolina and came to Texas, and changed his name to David Brown, and lived and died here under that name."

Under the decisions of our Supreme Court, we do not think the circumstances quoted "have any probative force whatever in establishing said deed as a forgery." The quotation reflected in the last sentence is taken from Judge Powell's opinion in Houston Oil Company v. Mills (Tex. Com. App.) 241 S. W. 132, wherein he reviews the character of David Brown, reciting facts almost identical with the facts relied upon by appellants here. Judge Powell cites many authorities in his opinion. We would call attention to the following: McElroy v. Phink, 97 Tex. 147, 76 S. W. 753; Redus v. Burnett, 59 Tex. 577; Rankin v. Busby (Tex. Civ. App.) 25 S. W. 679; West v. Houston Oil Company, 136 F. 343, 69 C. C. A. 169; 22 C. J. 470.

[10] (c) Appellants also rely on the small consideration paid by Mary Frazier to Le Grande, as recited in his deed to her. It was admitted that Mary Frazier was the daughter and only heir at law of David Brown. The effect of this deed was reviewed by the Commission of Appeals in their opinion on the former appeal, and under that decision the small consideration recited in the deed could not constitute evidence on the issue of forgery.

On the former appeal, the Supreme Court held directly as a matter of law that appellees were innocent purchasers under John P. Irvin, "if the record shows a regular chain of title from the original grantee." The verdict of the jury sustaining the validity of the deed from Brooks to Le Grande establishes the fact that appellees hold under a regular chain of title. It follows then that, holding a regular chain of title, and being innocent purchasers as against the senior conveyance under which appellants hold, appellees were properly awarded judgment for the land.

In conclusion, the trial judgment, both on the issue of ten-year limitation and on the issue of holder under a regular chain of title, should be in all things affirmed.

HIGHTOWER, C. J., not sitting.