Sam K. VIERSEN et al., Appellants,

v.

Ida BUCHER et al., Appellees.

No. 7007.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 27, 1960.

Allen & Allen, Perryton, Ed. Cage, Dallas, Smith, Inglish & Gray, Okmulgee, Okl., and Underwood, Wilson, Sutton, Heare & Berry, Amarillo, for appellants.

Lemon & Close, Perryton, for appellees.

CHAPMAN, Justice.

This is an appeal by Sam K. Viersen and others from the judgment of the trial court based upon a jury verdict finding a mineral

deed now more than 34 years old [the instrument upon which appellants depend for an undivided one-half interest in the minerals under a section of land] to have been a forgery. The appellees are Ida Bucher and her sons and daughters, the latter joined by their husbands.

The instrument in question, which we shall hereafter refer to as the Mineral Grant shows to have been executed by Anton Bucher and his wife, Ida Bucher, to N. W. Ricker for a valuable consideration, on October 25, 1926, acknowledged by them before Dora J. Patton, a notary public of Lipscomb County, Texas on the same day and filed for record the next day. The record also shows an oil and gas lease made by the same parties to the same person on the same section the same day, with the acknowledgement taken by the same notary public on the same day and filed for record at exactly the same time. Appellees admit to the oil and gas lease but contend the Mineral Grant was a forgery.

Nineteen points of error are raised. Because of our view of the case, we believe it will be unnecessary to discuss them all, though the record does reveal a number of errors. Points of error are raised that assert no evidence to sustain the findings of forgery of the signatures of both Anton Bucher and Ida Bucher and that such findings are against the great weight and preponderance of the evidence.

We cannot say there is not any evidence to support the judgment. There is not any direct evidence of the forgery of Anton Bucher, now deceased, but there is some negative evidence that raises inferences that we believe would constitute more than a scintilla of evidence. There is direct evidence by Ida Bucher that she did not sign the Mineral Grant but as we shall hereafter demonstrate, it is immaterial if Anton Bucher signed it for the purposes and considerations shown.

Over strenuous objections of appellants, which should have been sustained, Ida Bucher was permitted to testify:

"Q. And your husband went to his grave without knowing about this mineral deed, is that correct?

"A. He didn't know a thing about it."

She also testified in effect that nothing was said in her presence concerning a sale of minerals; that she and her husband signed only one instrument, the oil and gas lease for which Mr. Ricker gave them a check for $640; and that they cashed it the next time they were in town. She testified that neither she nor her husband went to town that day, the day the acknowledgement shows to have been made on the Mineral Grant.

The testimony is without contradiction that Mr. Ricker, the grantee, and Mr. Bucher were in the field together before they came to the house, where she admitted that both she and her husband signed the oil and gas lease and that Mr. Bucher and Mr. Ricker then left the house and her husband went back to the field. It is obvious from the record that Ida Bucher could not have possibly known whether Anton Bucher signed the Mineral Grant or not and her testimony was only an expression of an opinion not based upon a fact or facts but based only upon hearsay or surmise. However, when all her testimony is considered in its most favorable light, it shows circumstances and inferences which we believe constitute some evidence of probative force which would preclude us from holding the evidence as a matter of law was insufficient upon which to base the verdict of the jury and the judgment of the court; in other words, sufficient to preclude us from holding that it constituted no evidence.

■ The question raised by appellants to the effect that the verdict of the jury was against the great weight and preponderance of the evidence constitutes an entirely different situation in this record and we believe is precisely the type case in which the great weight and preponderance of the

evidence rule should be invoked. It was early held by our Sup.Ct. that it is in the power of the Court of Civil Appeals to set aside the findings of a jury if, in their opinion, the verdict was against such a preponderance of the evidence as to justify such action. Choate v. San Antonio & A. P. Ry. Co., 91 Tex. 406, 44 S.W. 69. In the much later and often quoted and cited land mark case of In re King's Estate (King v. King), 150 Tex. 662, 244 S.W.2d 660, 661 our Sup.Ct. has said:

> "The question requires the Court of Civil Appeals, in the exercise of its peculiar powers under the constitution and Texas Rules of Civil Procedure Nos. 451, 453, and 455, to consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust—*this, regardless of whether the record contains some 'evidence of probative force' in support of the verdict.*" (Emphasis added.)

George J. Lacy examiner of questioned documents of Houston, Texas who had two courses at Northwestern University in preparation for his profession; who has studied and worked with many of the leading experts in the United States on the science of identifying signatures, who is a member of the American Society of Questioned Documents Examiners; whose writings have been published in periodicals here and in other countries; who has been used as a speaker before bar associations and other such groups; who has been engaged in the profession for more than 25 years; who maintains his office and laboratory as a full time profession and whose qualifications were admitted by appellees, testified positively that in his opinion Anton Bucher and Ida Bucher signed both the oil and gas lease and the Mineral Grant. He elaborated in detail as to how he arrived at his conclusions and used enlarged photographs of the known and questioned signatures to establish his opinion, comparing the signature of Anton Bucher on the questioned document with his signature on the admitted document and a number of checks later signed by him.

Though the jury found otherwise, we feel compelled to say that Mr. Lacy's testimony taken in connection with the exhibits are very convincing of the legitimacy of the signatures of both Ida Bucher and Anton Bucher on the Mineral Grant.

The deposition of Dora Josephine Cotter, formerly Dora J. Patton, the notary public who shows to have taken the acknowledgements of Anton Bucher and Ida Bucher on the Mineral Grant and oil and gas lease, was introduced by appellees and she deposed in substance as follows: she was stenographer and bookkeeper at the Citizens National Bank in Higgins on October 25, 1926; she was acquainted with both Anton Bucher and Ida Bucher by sight; she did not have any definite recollection of taking the acknowledgements after 33 years but said the signature on the Mineral Grant was hers and that Anton Bucher's signature looks like his; that she had never been in the home of Anton Bucher for any reason; business or otherwise; that as best she could remember she never notarized an instrument which was not signed or acknowledged in her presence by the person signing same; and that she or someone in the bank always explained the instrument to the person signing it.

The deposition of J. R. Wilson was also offered by appellees. He had been in the oil business for 43 years; he hired N. W. Ricker to buy a number of leases and minerals for him in about 1926 or 1927; Mr. Ricker bought the leases and minerals in his own name and transferred them to him; he gave Ricker authority to buy anything he could for a dollar an acre bonus and ½ the mineral rights under the land upon which he took the lease; he asked either a banker or a businessman in Shattuck, Oklahoma, to recommend a good substantial man who was reliable to do the

lease and mineral trading for him, and Ricker was the man they recommended; that is how he became acquainted with Ricker and paid him 50¢ an acre commission to do such buying for him; that Ricker took the oil and gas lease and the mineral deed in separate instruments but is sure he paid only $640 for both; that he bought thousands of acres in that area in the same manner and for the same price; Ricker worked for him about four months, bought about eight thousand acres in that area and he never heard from him after the purchases he hired him for were completed; the two requisite instructions he gave Ricker was to be positive that both the wife and husband signed each instrument before a notary public well known in the community, like a banker, someone in an attorney's office, or the general store. To counteract this testimony showing the legitimacy of the signature of Anton Bucher on the Mineral Grant we have only the negative testimony of Ida Bucher above related, based on events that happened more than 33 years prior to the time she gave her testimony; the testimony of the expert, Harry Neal, placed on the stand by appellees; and the testimony of the Buchers' oldest child, Mrs. Thomas, who was eight years of age in 1926.

The gist of Ida Bucher's testimony has already been related. Mr. Neal, whom appellees sponsored as a hand writing expert, testified in substance as follows:

"Q. And it is your testimony then from comparing those two, [the Mineral Grant and the oil and gas lease], you are not in position to say whether either of them is a forgery? A. That is correct, sir.

"Q. And if one of them is a forgery, and the other is not, you are not in position to say which one is or isn't? A. That's right.

"Q. And further, you are not in a position to say whether the signature of Ida Bucher on the one instrument is made by the same person as the signature of Ida Bucher on the other? A. I am unable to say.

"Q. And you are unable to say whether the signature of Anton Bucher on one instrument is made by the same person as the signature of Anton Bucher on the other instrument? A. That is correct, sir.

"Q. And you don't purport to express any opinion about that whatsoever? A. No, sir."

The daughter, Mrs. Thomas, who was eight years old at the time Mr. Ricker leased the section of land in question, testified in effect 33 years later that she remembered about a man coming to their house in 1926 to make an oil and gas lease. She could not say whether her father went to town that day but knew her mother did not. Therefore, her evidence was without any probative force concerning whether her father signed the Mineral Grant or went to Higgins on October 25, 1926.

▮ It is true we have the positive, affirmative testimony of Ida Bucher that 33 years previously she did not sign the Mineral Grant nor acknowledge it. She also testified she did not acknowledge the oil and gas lease. As we have heretofore stated we are of the opinion that neither her signature nor acknowledgement was necessary to the validity of the Mineral Grant. It is without contradiction that the land was deeded to Anton Bucher during the time he and Ida Bucher were married, that it was community property, and that only ½ the undivided minerals under the section was conveyed by the questioned instrument. This left an undivided ½ of the minerals under the entire section, the equivalent of all the minerals under 320 acres, and more than the full minerals under a 200 acre homestead, which homestead at that time had not been designated.

▮ It has long been the law that where the title to the property is in the

husband or the community, he may make a valid sale of the excess over the homestead exemption without the joinder of the wife. Hanes v. Hanes, 239 S.W. 190 (Comm. of App. opinion adopted). We believe in this case the 200-acre portion of the minerals under the section constituting the homestead would not have to be from a divided tract set apart but could be from an undivided portion of the section so long as it constituted the equivalent of the full minerals under 200 acres in the absence of a showing that the husband acted in fraud of the wife's homestead rights. Though not involving minerals separate from the land, we believe the principles of law announced in the case just cited and in Blankenship v. Lusk, Tex.Civ.App., 77 S.W.2d 341; Fidelity Lumber Co. v. Adams, Tex.Civ. App., 230 S.W. 177; and Mass et al. v. Bromberg, 28 Tex.Civ.App. 145, 66 S.W. 468 support this theory.

■ Accordingly, after considering and weighing all the evidence in the case we hold the verdict is so against the great weight and preponderance of the evidence as to require a reversal—this regardless of the fact that the record contains some evidence of probative force in support of the verdict. In re King's Estate (King v. King) et al., 150 Tex. 662, 244 S.W.2d 660.

We believe what we have said disposes of the case but we believe we should point out some matters that should be avoided in the event of another trial. In submitting the case to the jury, this time, the court asked the jury if the signatures of Anton Bucher and Ida Bucher on the Mineral Grant were forged and then instructed the jury "that by a forgery is meant that an instrument was not signed by the person whose name appears thereon."

■ It has been held that where a person has duly acknowledged the execution of his partition deed in the manner and before an authority provided by law, even though his signature was forged to it he adopted and made the contract his own. Pena et al. v. Frost National Bank et al., Tex.Civ.App., 119 S.W.2d 612, 617 (writ refused). Of similar import are the rules announced in Newton et al. v. Emerson et al., 66 Tex. 142, 18 S.W. 348; and Mondragon et al. v. Mondragon, 113 Tex. 404, 257 S.W. 215. Obviously then the submission in the manner above shown was not a correct submission and if a proper record had been made we believe it would have constituted reversible error. Appellant cites a number of cases holding that only an objection to a definition has to be made and urges upon this court that it is unnecessary to tender a substantially correct definition. Those cases were decided before Rule 279 Vernon's Ann.Texas Rules and clearly are not the law now. See Rule 279 V.A.T.R.; "Commentaries" thereunder, third full paragraph p. 221 and Modica v. Howard, Tex. Civ.App., 161 S.W.2d 1093.

■ We also hold that the Mineral Grant, being a deed more than 30 years old, is entitled to be admitted as an ancient document, not to prove alone within itself its genuineness but to go before the jury as some evidence in order that they may pass upon the issue as to its genuineness. It is admissible for more than just the mere limited purpose for which the trial court admitted it in the trial below, that of comparing the signature of Anton Bucher on the Mineral Grant with his known and admitted signature on other instruments. Emory et al. v. Bailey, 111 Tex. 337, 234 S.W. 660, 18 A.L.R. 908.

It is thought that the other errors complained about may not occur in the event of another trial so we deem it unnecessary to make further comment.

The judgment of the trial court is reversed and the case remanded for another trial.