R. T. COWAN et al., Appellants,

v.

T. B. MASON et al., Appellees.

No. 7767.

Court of Civil Appeals of Texas.

Amarillo.

March 4, 1968.

Rehearing Denied April 15, 1968.

Thomas Braley, Pampa, Stubbeman, Mc-Rea, Sealy & Laughlin, W. B. Browder, Jr., and Milton L. Bankston, Midland, of counsel, for appellants.

Bill W. Waters and Malcolm C. Douglass, Pampa, Guy S. Hardin, Shamrock, for appellees.

CHAPMAN, Justice.

This is in lieu of our opinion announced on January 8, 1968. The appeal is by plaintiffs-appellants, R. T. Cowan and others, including Sarah Byrens, seeking relief by way of an equitable bill of review from a judgment in favor of T. B. Mason and others, based upon an instructed verdict for defendants-appellees.

The suit was instituted by appellants on behalf of themselves and more than 500

parties as members of a class seeking to set aside a judgment rendered against them on October 25, 1945, in Cause No. 3625 in Wheeler County, Texas, styled W. J. Johnston et al. v. E. L. Chapman et al. Instruments introduced into the record for the purpose of Bills of Exception (the court having sustained objections to their introduction for any other purpose) show a deed dated January 26, 1928, from W. J. Johnston and wife, Elizabeth Johnston, to Harry Byrens of a $\frac{1}{16}$th mineral interest in approximately four sections of land in Wheeler County, Texas. On the same day Byrens conveyed a $\frac{1}{32}$nd mineral interest in such property to Lucky Johnston Royalty, Harry Byrens, Trustee, which instrument was recorded on January 28, 1928.

The record also shows a correction deed dated February 10, 1928, from W. J. Johnston and wife, Elizabeth Johnston, to Harry Byrens, which referred to the January 26, 1928, Deed from the Johnstons to Byrens and corrected the grant of a $\frac{1}{16}$th mineral interest by conveying a $\frac{1}{2}$ mineral interest to Byrens in said land. This instrument was recorded on February 20, 1928. Subsequent to the conveyance just described many persons and entities acquired interests in the property, including R. T. Cowan, G. S. Anderson, Monarch Oil and Royalty Co., Hendricks Ranch Royalties and Sarah Byrens, the latter by virtue of being sole devisee under the will of Harry Byrens duly and legally probated in Los Angeles County, California following his death in 1940.

On August 29, 1945, in Cause No. 3625 in Wheeler County, Texas W. J. Johnston, Elizabeth Johnston and T. B. Mason filed suit in trespass to try title seeking cancellation of the 1928 Deeds from the Johnstons to Byrens, naming more than 500 persons and entities as parties defendant and alleging said deeds were forgeries. On the same day T. B. Mason, a stranger to the Harry

Byrens' title, made an affidavit "* * * *that the residences of each of the defendants are unknown to each of the plaintiffs herein.*"[1] Citation was issued on the Mason affidavit and was properly published in the Wheeler Times for the periods required. On October 25, 1945, judgment was entered in the District Court of Wheeler County against all the defendants, reciting, inter alia, "* * * the defendants, though duly and legally cited by publication herein, came not * * *."

The Mason affidavit (and the only one upon which citation by publication was issued) did not affirm that the names of the heirs of the individual defendants nor the stockholders of the defunct corporations named in their petition were unknown to affiant, as provided for service by publication under Rule 111 [2] and Art. 2040 as it still exists since partly repealed by Acts 1939, 46th Leg., p. 201, Sec. 1. Neither did the affiant affirm that any of the defendants were non-residents of the state, nor were absent from the state nor were transient persons, as provided for service by publication under original Rule 109 before the amendment thereto which became effective February 1, 1946.

Judgment was rendered in the No. 3625 case in Wheeler County on October 29, 1945, against the more than 500 individuals, (including Harry Byrens) five corporations, and "* * * the unknown heirs and legal representatives of the named parties," even though the affidavit upon which citation by publication was issued did not mention the unknown heirs and legal representatives of the individual defendants, the names of the stockholders of the alleged defunct corporations, nor any of the others mentioned in the statutes and rules above named except to say "* * * that the residents of each of the defendants are unknown to each of the plaintiffs herein."

---

1. All emphases herein are ours unless otherwise stated.

2. All rule references are to Vernon's Texas Rules Annotated or their predecessors and all article references are to Vernon's Texas Civil Statutes or their predecessors in Texas Revised Civil Statutes.

Rule 111 in effect at the time of the 1945 suit provides: "If the plaintiff * * * shall make oath that the names of the heirs or stockholders against whom an action is authorized by Art. 2040 of the Revised Civil Statutes of Texas, 1925 [3], are unknown to the affiant, the clerk shall issue a citation for service by publication." Therefore, suits such as the 1945 action, No. 3625, were authorized if the article and statute were followed. They were not. For example, Harry Byrens died in 1940 and his wife, Sarah Byrens, was the sole beneficiary under the will of her husband and she was not named as a defendant in the suit. Neither were stockholders of defunct corporations mentioned in the affidavit upon which citation by publication was issued.

■ We believe it is not possible for this court to arrive at an equitable and just disposition of this case without a reversal and remand if the law will permit. Appellants' pleadings assert in effect that the two deeds of W. J. Johnston and Elizabeth Johnston to Harry Byrens in January and February respectively of 1928 were acknowledged under all the formalities and with all the solemnities required by law. Appellants say if they had been personally served each of them would have been able to assert and prosecute a valid and meritorious defense to the No. 3625 case in Wheeler County, by showing that a respected and well-known banker in Pampa acknowledged the first deed and a respected and well-known lawyer in Miami acknowledged the second deed; that each of them were alive in 1945 and could have testified that the deeds set aside in the 1945 judgment as forgeries were actually executed by the Johnstons to Harry Byrens.

In the early days of the judicial system of this state our Supreme Court in considering constructive service held " * * * plaintiffs should strictly comply with the rules of procedure before judgment. No-

tice by publication is, at best, but a miserable substitute for personal service." Edrington v. Allsbrooks, 21 Tex. 186. See also Hopkins v. Cain, 105 Tex. 591, 143 S.W. 1145 (1912); Parker v. Scobee, 36 S.W.2d 303 (Tex.Civ.App.—Waco, 1931, n. w. h.) and cases there cited on the point; South Texas Development Co. v. Martwick, 328 S.W.2d 230 (Tex.Civ.App.—Waco, 1959). In the latter case the court said " * * * when a statute provides for constructive service in a given case the method prescribed is exclusive and admits of no substitute."

In Underwood v. Pigman, 32 S.W.2d 1102 (Tex.Com.App., 1930, Sec. B) a county attorney made affidavit upon which citation by publication was issued that the residence of G. M. Underwood and *unknown parties* could not be ascertained. The court held that G. M. Underwood being dead at the time the suit was instituted could not have been a party defendant, so his lawful heirs at law were necessary parties defendant. The Court said the lawful heirs were his wife, P. A. Underwood and " * * * these plaintiffs in error". The Court also stated " * * * it was clearly and unmistakably the duty of the county attorney of Ward County, in order to secure a valid citation by publication, * * * to have filed a petition against the heirs of G. M. Underwood, alleging their names to be unknown to him, describing them as the heirs of G. M. Underwood, and to have made oath that the names of such heirs were unknown to the affiant."

The Court further held " * * * the law visited the state of Texas and her authorized agent, the county attorney of Ward County, * * * with notice of the contents of said deed, which recited, among other things, that G. M. Underwood, the grantee therein, resided in Ward County, Tex.", citing Art. 6646. The court then said: " * * * in other words, these plaintiffs in error were entitled to show, as they did, that they were

3. Those against whom an action is authorized by Art. 2040 of the Revised Civil Statutes of Texas, 1925, are the heirs as

such to whom property has been granted or has accrued, or the stockholders of defunct corporations.

proper persons to be made parties defendant * * * and that they were entitled to be served as such defendants with process, in such suit to which they were parties defendant, none of which was done." Neither was Sarah Byrens made a party defendant nor cited constructively or otherwise.

The affidavit upon which citation by publication was issued also failed to comply with the method provided in 1945 for service upon domestic corporations, Art. 2029. At the time of the attempted service in the 1945 case Hendricks Ranch Royalty and Monarch Oil & Royalty Corporation existed under the laws of this state with their principal offices within the state. We know of no proper service which could be had upon them at that time except as provided in the last named article. Such service was not even attempted. Under the cases cited above as to the requirement for strict compliance with the procedural rules concerning constructive service, these domestic corporations simply were not served.

█ The record shows R. T. Cowan was a resident of Texas at the time of the affidavit made by Mason and that the deed by which he acquired an interest in some of the subject property was on record in Wheeler County and contained his correct address in Fort Worth. Under the authority of Underwood v. Pigman, supra, both the plaintiffs and their attorneys in the 1945 suit were on notice of the contents of the duly recorded deeds which recited their residences, the article cited therefor being 6646. In discussing Art. 6848 (predecessor to Art. 6646 in the exact same language) our Supreme Court in Leonard v. Benford Lumber Company, 110 Tex. 83, 216 S.W. 382 (1919) has held that " * * * our statutes bear a settled construction, under which registration of an instrument carries notice of its contents only to those bound to search for it, * * *." Under the record here (considering the fact that Mason's affidavit spoke both for himself and the Johnstons) and in view of the strict requirements for constructive service, we hold Mason was bound

to search for the information so readily available to him of the parties such as R. T. Cowan. Had he done so he would not have been able to affirm that the residences of each of the defendants was unknown to each of the plaintiffs. In Kitchen v. Crawford, 13 Tex. 516 (1885) our Supreme Court held:

"If the defendant was not in fact a non-resident * * * but was present having a fixed residence within the state which was known, *or what is the same in law, which might have been known to the plaintiff by the use of proper diligence* * * * proof of it would avoid the service by publication * * *."

When we consider this holding with the statement in the same case to the effect that " * * * it is not the making of the affidavit, but the truth of it, that is, the existence in fact of the assumed condition which enables the court to acquire jurisdiction over the person of the defendant by publication" it makes the Mason affidavit for citation appear even less valid. We concede the question as to Cowan and those in his class is a more serious question than the others we have discussed.

It is true that Rule 109 as it existed in 1945 did not require diligence to locate the whereabouts of defendants before issuing citation by publication, but we believe such fact does not mitigate against common law holdings by our Supreme Court such as the diligence said to be required in Kitchen v. Crawford, supra. Accordingly, we hold that Mason's affidavit to the effect that the residences of each of the defendants are unknown to each of the plaintiffs constituted extrinsic fraud. South Texas Development Co. v. Martwick, supra; Hammond v. Hammond, 210 S.W.2d 829 (Tex.Civ.App.— Galveston, 1948, writ dismissed). In the case last noted the court held extrinsic fraud existed when the unsuccessful party is kept away from the court by keeping him in ignorance of the suit. If ever we saw a case that effected that purpose it is this one. In the Martwick case the Waco court held: "As to whether such fraud was intrinsic

or extrinsic—fraud which denies the opportunity to fully litigate, or from having a trial, or to know of the suit, is extrinsic." It is admitted that Mason made no effort whatsoever to locate any defendant. When the inferences required to be indulged against an instructed verdict [4] are applied we think it is fair to say from the record that he simply just signed whatever his lawyer told him to sign. It is also noteworthy that he presumed to speak as agent for the Johnstons in making the affidavit. The record here, though very voluminous, is not as clear on some of the facts as we would like. However, if we understand the Mason deposition he stated the Johnstons were the mother-in-law and father-in-law of Harry Byrens. If so they did not have to be clairvoyant to know Byrens was dead when he was sued nor to know that their daughter, the sole beneficiary of his estate, would have to be sued to void the deeds they contended Byrens had forged, and Mason was speaking as agent for them when he said that the residence of each of the defendants are unknown to each of the plaintiffs. It has been held in the "unknown to affiant" clause of Art. 2039 that " * * * a plaintiff may not avoid the purpose and spirit of the statute by procuring his agent * * * to make affidavit of his want of knowledge of the residence of the defendant, when such residence is known to the plaintiff. The plaintiff may not thus fraudulently procure constructive service." Snell v. Knowles, 87 S.W.2d 871 (Tex.Civ. App.—Texarkana, 1935, writ dism'd).

Despite the facts above stated and the authorities cited we are not unmindful of the statements in Alexander v. Hagedorn, 148 Tex. 565, 226 S.W.2d 996 (1950) concerning the requirements that must be met in a bill of review proceeding before a final judgment may be set aside, i. e., the party seeking such equitable relief must prove: (1) a meritorious defense to the cause of action; (2) which he was prevented from making by fraud, accident or wrongful act of the opposite party; (3) unmixed with any fraud or negligence of his own. To meet the first test we turn now to a consideration of the refusal of the trial court to admit certain evidence offered.

Title to the property was shown from the sovereignty of the soil to W. J. Johnston and wife, Elizabeth Johnston. When the 1928 Deeds were offered by certified copies filed among the papers in due time before trial and with proper notice to opposing counsel, objections were made on the grounds that they had filed affidavits of forgery and there was no proof of execution; that the 1945 judgment was binding on the issue of forgery; and that the limitation period had run.

The certified copies were offered as ancient instruments, they having been filed since 1928, and as copies of original deeds lost and not located after diligent search by Byrens' son. The court refused the admission of those and all other title instruments and deeds.

This court in Viersen v. Bucher, 342 S. W.2d 203 (Tex.Civ.App.—Amarillo, 1960, n. w. h.) held that a mineral deed more than 30 years old is admissible as an ancient document to go before the jury as some evidence for its genuineness to be passed on by the jury, citing Emory v. Bailey, 111 Tex. 337, 234 S.W. 660 (1921). The Supreme Court in the case just cited held an original deed is admissible as an ancient instrument when, (1) it comes from the proper custody, (2) when it is free from suspicion, and (3) when it is shown to have been in execution more than 30 years.

4. Anglin v. Cisco Mortg. Loan Co., 135 Tex. 188, 141 S.W.2d 935 (1940); Speights v. Deon, 182 S.W.2d 1016 (Tex. Civ.App.-Eastland, 1944, writ ref.); White v. White, 141 Tex. 328, 172 S.W.2d 295 (Tex.1943); Stevens v. Karr, 119 Tex. 479, 33 S.W.2d 725 (1930); Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561 (Tex.1952); Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256 (Tex.1951); Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696 (1914).

A certified copy from the clerk's office where it had been promptly filed has been held to be no less efficacious than production from "proper custody", within the purview of that statement in requirement "(1)" above. Emory v. Bailey, supra. With respect to requirement "(2)" the court in the case last mentioned said:

"With an original deed lost, a certified copy is the best evidence of what was disclosed on the face of the deed, and when a certified copy discloses no notation by the record nor anything else to excite suspicion, no other presumption would be warranted than that the deed exhibited 'an honest face', and thus the test is met that the certified copy is of an instrument free from suspicion."

On the third requirement it has been textually stated that:

"To qualify as an ancient instrument, a document must have been in existence for at least thirty years. It need not be thirty years old when the suit is instituted; however, it is sufficient if it is thirty years old at the time it is offered in evidence". 23 Tex.Jur.2d, Sec. 276, Page 408–409. See also Holmes v. Coryell, 58 Tex. 680 (1883); Bass v. Sevier, 58 Tex. 567 (1883); Mackay v. Armstrong, 84 Tex. 159, 19 S.W. 463 (1892); Ardoin v. Cobb, 136 S.W. 271 (Tex.Civ.App.—San Antonio, 1911, n. w. h.).

It has also been held that certified copies are admissible. In Loving County v. Higginbotham, 115 S.W.2d 1110 (Tex.Civ.App.—Eastland, 1938, writ dism'd), the court held: " * * * if an instrument would be an ancient instrument subject to record and duly recorded at such a time that the record would be ancient, a certified copy of the record is admissible, even as against an affidavit of forgery."

In Holmes v. Coryell, supra, the Supreme Court indicated that a certified copy provided better evidence of the execution of the deed than would the original, saying "skillful, indeed, would be the spoilation of a rec-

ord book which could not be detected." That court then quoted with approval from a textual statement as follows:

"The certified copy of the deed, coming surrounded with such facts, was properly admitted in evidence, for under the common law rules of evidence the deed would prove itself; and under given circumstances the statute of this State, as before said, declares that a certified copy of the record of any such instrument shall be admitted in manner as the original could be. When offered, being more than thirty years old, it stood as would a deed of less age after it had been proved by one or more of the subscribing witnesses, and upon those who sought to attack its genuineness rested the burden of proof. Starkie on Evidence (920), 529."

■ Additionally, the filing of an affidavit of forgery on an ancient instrument is no evidence of forgery except to require the one offering it to prove its execution as at common law. Cox v. Cock, 59 Tex. 521 (1883); Crosby v. Ardoin, 145 S.W. 709 (Tex.Civ.App.—El Paso, 1912, writ ref'd); Crockett v. Arkansas-Louisiana Gas Co., 125 S.W.2d 1101 (Tex.Civ.App.—Texarkana, 1939, n. w. h.). In the latter case the court said the deed without any proof of its execution was admissible in evidence.

■ The introduction of an ancient instrument is prima facie proof of its genuineness. Niles v. Houston Oil Co., 288 S.W. 614 (Tex.Civ.App.—El Paso, 1926, writ dism'd); Crosby v. Ardoin, supra; Cox v. Cock, supra; Holmes v. Coryell, supra; Stooksberry v. Swann, 85 Tex. 563, 22 S.W. 963 (1893). In the last cited case the Supreme Court of Texas said: "If, on proper and uncontroverted testimony, a deed be admitted as an ancient instrument, then, in the absence of evidence, subsequently admitted, tending to show that it is not genuine, a court might, without violation of the statute, instruct the jury to consider the execution of the instrument proved."

The only affidavits filed by appellees concerning forgery states: "The defendants would show that they believe each of those deeds to be a forgery." No pleading attacks the acknowledgements on the questioned instruments. The presumption is that the acknowledgements in regular and legal form are true and correct. Tompkins v. American Republics Corp., 248 S.W.2d 1001 (Tex.Civ.App.—Beaumont, 1952, n. w. h.); Gomez v. Riddle, 334 S.W.2d 197 (Tex.Civ.App.—San Antonio, 1960, n. w. h.); Stout v. Oliveira, 153 S.W.2d 590 (Tex.Civ.App.—El Paso, 1941, writ ref'd w. o. m.).

Accordingly, we hold the trial court erred in refusing to admit into evidence the instruments of title and testimony of witnesses offered by appellants.

The point is made in appellees' brief that even though the appellants brought this action in the nature of a direct attack, it is actually a collateral attack because the Texas Company is recognized in the bill of review pleading upon which the case was heard to own a leasehold interest in the subject property. They say the company was a necessary party, was not before the court, so the action was not direct.

That pleading did allege the sole surviving heirs of W. J. Johnston, deceased executed an oil and gas lease to the Texas Company on November 10, 1949, but asked the clerk not to serve the company.

Proceeding to judgment in the absence of The Texas Company, whom appellants' bill of review pleading alleged to be lessee under a lease in 1949 from the heirs of W. J. Johnston of the property involved in Cause No. 3625, has been the question that has given us a great deal of concern in attempting to dispose of this case. This is true because there is a rule of law, based upon principles of public policy, " * * * which precludes inquiry by evidence aliunde the record in a collateral attack upon a judgment of a domestic court of general jurisdiction, regular on its face, into any fact which the court rendering such judgment must have passed upon in proceeding to its rendition." Crawford v. McDonald, 88 Tex. 626, 33 S.W. 325 (1895). The court in proceeding to the rendition of the 1945 judgment found the defendants were duly and legally cited by publication, though in fact they were not. Appellees insist the attack on the 1945 judgment was collateral because The Texas Company was not before the court. We believe this requires a consideration of Rule 39, V.A.T.R. concerning indispensable and necessary parties. The rule, titled "Necessary Joinder of Parties" provides, inter alia, that

"(a) * * * persons having a joint interest shall be made parties and be joined as plaintiffs or defendants.

(b) When persons who ought to be parties if complete relief is to be accorded between those already parties, have not been made parties and are subject to the jurisdiction of the court, the court shall order them made parties."

In construing the rule in Petroleum Anchor Equipment, Inc. v. Tyra, 406 S.W.2d 891 (Tex.1966) our Supreme Court has held that

" 'necessary' parties of which the rule speaks fall into two categories: (1) those who under paragraph (a) *shall* be made parties,' and (2) those who under paragraph (b) 'ought to be parties if complete relief is to be accorded between those already parties.' It is also at once apparent that 'persons having a joint interest' within the meaning of paragraph (a), properly interpreted, are *indispensable* parties, but that those who simply ought to be joined if complete relief is to be accorded between those already parties are not *indispensable*."

If it could be said that The Texas Company had a joint interest in the property, which appellees are contending appellants pleaded, then it was an indispensable party and the trial court committed fundamental error in proceeding in its absence, an error which should be noticed by this court. Petroleum Anchor Equipment Co., Inc. v. Tyra, supra.

■ Under paragraph (b) of Rule 39 it appears clear from the record that the joinder of The Texas Company was not necessary for complete relief to be accorded between those already parties. Therefore, we believe it cannot be said under either category (1) or (2) that the case must be affirmed.

■ There still remains the affirmative defensive questions of limitation, diligence and laches. The testimony shows Mr. Cowan did not know of the 1945 judgment until 1953. He immediately bought an abstract and employed counsel to file suit to set aside the judgment. Suit was filed in February, 1954. Appellants by brief, without citing the transcript record, state the case just mentioned was dismissed by the court on its own motion 21 months later and then refiled 15 months later. Taking such statements as true, we still can not say that such period without trial in a case as complicated and which involved so many people and entities as this case constituted lack of diligence and laches as a matter of law.

Since none of the persons or entities constituting the defendants in the 1945 case were served personally, there is not any reason to say they discovered the judgment nor would have discovered it by the exercise of proper diligence. We believe these defenses constitute questions of fact for the jury from this record, or the court if the facts should be submitted to it.

The judgment of the trial court is reversed and remanded for trial.