John Francis MALLOY, et al., Appellants,

v.

Yvonne BLAU, et al., Appellees.

No. 07–84–0170–CV.

Court of Appeals of Texas, Amarillo.

Oct. 15, 1985.

Rehearing Denied Nov. 12, 1985.

Lemon, Close, Shearer, Ehrlich & Brown, Otis C. Shearer, Booker, Buzzard Law Firm, Vanessa G. Buzzard, Pampa, for appellants.

Buchner & Ehrlich, Donald R. Buchner, Follett, Gibson, Ochsner & Adkins, James H. Doores, Amarillo, for appellees.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

Appellants John Francis Malloy, Pat Malloy, Jr. and Malloy and Company bring this appeal from a summary judgment in favor of appellees Yvonne Blau, Ernest D. Harris, Helen J. Harris, the Executors of the Estate of Wesley D. Harris, and Interstate Royalties Company of Oklahoma. We reverse and remand the cause for new trial.

In their six points of error, appellants assert (1) the trial court erred in granting summary judgment that appellants take nothing; (2) a 1940 trespass to try title action divested appellants of their mineral interest without notice reasonably calculated to apprise them of the pendency of the suit in violation of the due process clause; (3) whether the name and address of Pat Malloy's devisee was easily ascertainable in 1940 is a fact issue; (4) the 1940 judgment here in question was rendered as a result of the wrongful act of Alliance Life Insurance Company, unmixed with any negligence by appellants; (5) there is a fact issue as to whether Alliance Life Insurance

Company committed a wrongful act which prevented the devisee of Pat Malloy from knowing of the 1940 suit and having a fair opportunity to defend it; and (6) appellants have presented a prima facie meritorious defense to the 1940 suit here in question.

Appellants originated this suit as both a collateral attack upon, and in the alternative, an equitable bill of review to set aside, a 1940 trespass to try title judgment insofar as that judgment affected a mineral interest inherited by them from their parents. That interest was an undivided one-half interest in the oil, gas and other minerals under the west one-half of Section 12, Block 10, H.T. & B. R.R. Co. Survey, Lipscomb County, Texas, which interest is hereafter referred to as "the mineral interest." The 1940 suit was filed by appellees' predecessor in title. Insofar as relevant here, citation addressed to "the unknown heirs of Pat Malloy, deceased, and his and their heirs and legal representatives whose residences are unknown" was made by publication in that suit. In this suit, summary judgment in favor of the appellees was rendered by the trial court. This appeal results from that decision.

Because of the nature of the question presented by the appeal, a somewhat detailed recitation of the relevant history of the case is necessary. Appellants' father, Pat Malloy, purchased the mineral interest on November 15, 1927. At that time, there was an outstanding vendor's lien but, on December 31, 1927, the owners of the notes secured by that lien waived the priority of the lien as against Malloy's mineral interest. By mesne assignments, the Alliance Life Insurance Company (Alliance) obtained the lien covering the surface and the other one-half mineral interest. On June 11, 1940, Alliance obtained a deed from the owner of the surface estate and the other one-half mineral interest.

Alliance then filed the trespass to try title suit here in question on June 27, 1940. In its original petition, "Pat Malloy, who resides in Tulsa County, Oklahoma" was named as one of the defendants. On July 25, 1940, Alliance filed its first amended

original petition in which "THE UN-KNOWN HEIRS OF PAT MALLOY, deceased, and his and their heirs and legal representatives, whose residences are unknown" were named as defendants.

Alliance's attorney of record executed an affidavit that the names of the heirs of Pat Malloy and the names of their heirs and legal representatives were unknown to him. Based upon that affidavit, citation was published in *The Higgins News.* E.C. Gray was appointed to represent the defendants cited by publication and to file a general denial. The statement of facts of the trial of the trespass to try title suit is contained in our record. It reveals that no testimony was produced at the hearing. The only evidence produced at the hearing was the chain of title on the premises. However, the waiver of priority of lien was not included in that chain and, as far as the record shows, never revealed to the court. On September 10, 1940, judgment was rendered in the suit in favor of Alliance and against "the unknown heirs of Pat Malloy, deceased, and his and their heirs and legal representatives" for full title to the tract, including the mineral interest in question. Appellees now hold under a regular chain of title from Alliance.

■ Upon submission of this cause and at oral argument, appellants acknowledge that the trespass to try title suit is regular upon its face, and the question for our decision is their entitlement to a hearing upon their petition for an equitable bill of review. The seminal case discussing bills of review seeking to set aside judgment is *Alexander v. Hagedorn,* 148 Tex. 565, 226 S.W.2d 996 (1950). In that case, the Court established the rule that the complainant, to be successful in such a proceeding, must allege and prove: (1) a meritorious defense to the cause of action alleged to support the judgment, (2) which he was prevented from making by the fraud, accident or wrongful act of the opposite party, (3) unmixed with any fault or negligence of his own. *Id.* 226 S.W.2d at 998. The Court also cautioned that such suits are " 'always watched by courts of equity with extreme

jealousy, and the grounds on which interference will be allowed are narrow and restricted'; and the rules are not to be relaxed merely because it may appear in some particular case that an injustice has been done." *Id.* Appellees, for the purposes of this appeal, concede that appellants have raised fact issues as to their meritorious defense and lack of negligence. Our discussion, therefore, must be centered upon the question as to whether appellants have raised a viable fact question as to the second prong of the *Hagedorn* test, *i.e.,* whether they were prevented from presenting a meritorious defense by conduct falling within the perimeter of the "fraud, accident or wrongful act" conduct test prescribed in *Hagedorn.*

Appellants say that, because of the particular circumstances leading to the issuance of the citation by publication, that test has been met by them. Those circumstances include, first of all, the filing of the original petition listing Pat Malloy's residence in Tulsa County, Oklahoma, which is a circumstance, they say, showing knowledge of the plaintiff as to the county of residence of Malloy. Secondly, the filing of the amended petition listing Malloy as deceased and including his "unknown" heirs is another circumstance, they say, showing knowledge by that plaintiff of the fact that Malloy was deceased.

■ It is axiomatic that in reviewing the summary judgment cases, the reviewing court must accept as true the non-movant's version of the facts evidenced by the summary judgment proof and must make every reasonable inference in the non-movant's favor. Moreover, it does not matter that the court may surmise that the party opposing the motion is unlikely to prevail upon the final merits. *LeBlanc v. Md. Am. Gen. Ins. Co.,* 601 S.W.2d 750, 752 (Tex. Civ.App.—Beaumont 1980, writ ref'd n.r. e.).

Appellants then argue that the name and residence of the devisee of Pat Malloy was easily ascertainable in 1940. Supporting this proposition, they point out that their summary judgment proof shows Pat Mal-

loy died testate in 1934, and his will was probated in the County Court of Tulsa County on April 3, 1934 in Cause No. 11,-019. In the will, Malloy set out his address in Tulsa as 1131 E. 19th Street and devised his residuary estate, which included the mineral interest, to his wife Lenore H. Malloy. Tulsa's telephone directories during the period 1939–1941 showed the telephone number for Pat Malloy at 1131 E. 19th. Lenore H. Malloy, appellant's mother, resided at the 1131 E. 19th address and kept the telephone number shown for Pat Malloy in the directory from before 1939 until after 1941. Moreover, the September 1940 telephone directory listed appellant Pat Malloy, Jr. just under the listing for his father with his address and, of course, his telephone number.

■ Pat Malloy was active in Tulsa County politics during his lifetime and, indeed, had been County Attorney. His name was well known in that county. In 1959, Pat Malloy, Jr. mailed from Washington, D.C., an envelope addressed to "Pat Malloy, Tulsa, Oklahoma" with no street address or bos designation which was delivered to his office. Pat Malloy, Jr. practiced law in Tulsa County from January 1940 until July 1941 when he entered the military service. He resumed his practice in 1945. Under the tests applicable to our review of summary judgment proceedings, we conclude that the summary judgment proof was amply sufficient to raise a fact question as to the exercise of due diligence by Alliance in the trespass to try title suit.

Our inquiry must next be directed as to whether, in considering the effect of the 1940 judgment, an inquiry may be made into the diligence used by the plaintiff prior to obtaining the published citation as to the interest inherited by appellants and, as a corollary thereto, whether the failure to exercise such due diligence would amount to such extrinsic fraud as to support a bill of review.

Appellees argue that due diligence in attempting to find unknown heirs is not required either by the laws of the State of Texas or by the due process clause of the

United States Constitution. They also say that, even assuming arguendo, that due diligence was required and a failure to use such diligence is shown, that failure would be intrinsic and could not satisfy the equitable bill of review requirement of extrinsic fraud. We cannot agree with this argument.

In the old but still viable case of *Kitchen v. Crawford*, 13 Tex. 516 (1855), the Court had occasion to consider the question as to whether inquiry might be made into the exercise of the diligence used by plaintiff. In that case, a dispute arose over the sale of a slave. Crawford sued Kitchen and alleged that he was a non-resident of the State of Texas. He filed an affidavit to that effect, served Kitchen by published citation, and obtained a default judgment against Kitchen. Kitchen then filed suit seeking an injunction against the sheriff of Milam County and to set aside the default judgment. An injunction was originally issued, but on Crawford's demurrer was dissolved and the petition dismissed. Upon appeal by Kitchen, the case was reversed and remanded.

Relevant to our discussion is that portion of the opinion wherein the Court said:

"If, therefore, in the present case, the defendant was not in fact a non-resident, or absent from the State, but was present having a fixed residence within the State, which was known, *or what is the same in law, which might have been known to the plaintiff by the use of proper diligence,* and it had been so averred in the petition, proof of it would avoid the service by publication, and let in the defendant to all the defenses to which he would have been entitled if there had been personal service...." (Emphasis added.)

*Id.* at 521.

Appellees recognize *Kitchen,* but argue that the language of the court regarding diligence was "not based on a duty of one seeking citation by publication but was simply an element required to be proved by the one seeking to set aside the default judgment, to show that his residence was in the

State of Texas and that it was a fixed residence and that he was not in any manner secreting the fact of his residence in the State of Texas." We cannot agree with this interpretation. Earlier in the opinion, the Court specifically discussed the requirements for citation by publication. In the course of that discussion, the Court noted that the affidavit was sufficient prima facie evidence to authorize such publication. In that discussion, the Court said:

> ... it is not the making of the affidavit, but the truth of it, that is, the existence in fact of the assumed condition which enables the court to acquire jurisdiction over the person of the defendant by publication.

Significantly, the Court went on to say that if it "be proved that a predicament of fact did not exist which authorized service by publication, it will be ineffectual...." *Id.* at 520.

In the case of *Cowan v. Mason,* 428 S.W.2d 96 (Tex.Civ.App.—Amarillo 1968, no writ), this Court had occasion to consider both the holding in *Kitchen* and Tex.R. Civ.P. 109 (regarding citation by publication) as it existed at the time of this suit and prior to its amendment in 1945. In that opinion, after considering the portions of the *Kitchen* opinion above quoted, we said:

> It is true that Rule 109 as it existed in 1945 did not require diligence to locate the whereabouts of defendants before issuing citation by publication, but we believe such fact does not mitigate against common law holdings by our Supreme Court *such as the diligence said to be required in Kitchen v. Crawford, supra.* (Emphasis added.)

*Id.* at 100. In that case, we found that the affiant failed to exercise due diligence in the affidavit executed to obtain published citation, and we significantly followed the above quoted language with this statement:

> Accordingly, we hold that Mason's affidavit to the effect that the residences of each of the defendants are unknown to each of the plaintiffs *constituted extrinsic fraud.* (Emphasis added.)

The reason for that holding of extrinsic fraud was, we said, because an unsuccessful party was kept away from court by keeping him in ignorance of the suit. *Id.* We continue to think the discussion and holdings in *Kitchen* and in *Cowan* are viable and relevant to this case.

In support of the proposition that a question as to the sufficiency of the diligence required on the part of a plaintiff is intrinsic to the judgment, and not extrinsic, appellees cite the case of *Hartely v. Langdon & Company,* 347 S.W.2d 749 (Tex.Civ.App. —Houston 1961, no writ). In that case, in considering the question as to whether a failure to exercise diligence in attempting to ascertain the residence or whereabouts of defendants or to obtain service of nonresident notice, as the case might be, would constitute intrinsic or extrinsic fraud, the court, en route to a decision that it would constitute intrinsic fraud, pointed out that Rule 109, as of that date in question, required the court to inquire into the sufficiency of the diligence used. Bottomed on that premise, the Court found that the question of diligence would be squarely before the court at the time of hearing and "hence clearly intrinsic to the judgment." *Id.* at 757. That case is distinguishable from this one. Rule 109, as in force at the time critical here, did not require the trial court to inquire into the diligence, if any, used by the plaintiff. Indeed, by the emphasis the *Hartely* court placed upon the rule requirement to ascertain diligence, the case might be considered as authority for the opposite proposition, *i.e.,* in the absence of any such requirement, such as here, any such lack of diligence *would* constitute extrinsic fraud.

■ In summary, we hold that, under the record in this case, inquiry may be made into the diligence, if any, used by Alliance's attorney in attempting to ascertain the names and whereabouts of Malloy's heirs or devisees. Moreover, the facts enumerated above, when coupled with the fact that at the hearing of the 1940 suit

no evidence was produced other than the introduction of a chain of title not including the subordination of lien, are sufficient to raise a fact question as to the existence of "fraud, accident or wrongful act of the opposite party" within the purview of the second prong of the *Hagedorn* case.

In making this decision, we are not unmindful of appellants' argument as to the passage of time since the judgment and the necessity to settle titles and end litigation. However, our decision in this case is narrow and intended to apply only to the facts under this record. In making our decision as to the inquiry into the diligence of Alliance in obtaining the published citation, we are applying the law as it existed since 1855. We specifically are not holding that the applicable statutes as they existed in 1940 were unconstitutional. What we are saying is that, when properly presented, an inquiry may be made to determine again in the words of the *Kitchen* court, "the existence in fact of the assumed condition which enables the court to acquire jurisdiction over the person of the defendant by publication." 13 Tex. at 520. In the course of that inquiry "what might have been known to the plaintiff by the use of proper diligence" may be ascertained. *Id.* at 521. In this case, and under the somewhat unusual facts here existent, a fact question sufficient to preclude the rendition of summary judgment has been raised. In making our determination as to whether a fact finding favorable to appellants would constitute intrinsic or extrinsic fraud, we have placed reliance upon the provisions of Rule 109 as they existed in 1940, not as they presently exist.

We sustain appellants' points of error one, three, five and six. The judgment of the trial court is reversed and the cause remanded for trial on its merits.