

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

## No. 08-25-00076-CV

---

C.V.P.G Family Trust and C.V.P.G Family, LLC, Trustee, **Appellants**

v.

PlainsCapital Bank Trustee of the Guerra Mineral Trust, **Appellee**

---

On Appeal from the 229th District Court
Starr County, Texas
Trial Court No. DC-23-36

---

## MEMORANDUM OPINION[1]

Appellants C.V.P.G. Family Trust (C.V.P.G.) and C.V.P.G. Family, LLC, Trustee (Trustee)

filed a trespass to try title suit claiming title to property as heirs of the previous owner, Joaquin

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

Chapa. They allege that in 1764, the King of Spain granted property to Joaquin Chapa in what is now Starr County and the State of Texas later deeded that property to the heirs of Chapa. Appellee, PlainsCapital Bank, Trustee of the Guerra Mineral Trust, does not dispute that history but contends that a final court judgment has already established the Guerra Mineral Trust's current ownership of the property and bars further litigation. The trial court granted summary judgment for PlainsCapital. For the reasons stated below, we affirm.

## I. BACKGROUND

### A. 2016 case

In 2016, PlainsCapital filed a trespass to try title suit against the "unknown heirs of Joaquin Chapa and all persons claiming an interest in the surface or mineral estate of the . . . property." PlainsCapital alleged that the Guerra Mineral Trust was the owner of the mineral interests in 781.11 acres of the property due to the adverse possession of its predecessor-in-interest, HP Guerra.

The 49th District Court of Zapata County, Texas, had previously, in 2005, entered a judgment determining 220 people to be the heirs of Chapa and listing their names, addresses, and their percentage of the share of Chapa's estate. Nonetheless, PlainsCapital requested service of citation by publication and filed an affidavit by its attorney stating:

> Because neither [PlainsCapital] nor Affiant are knowledgeable about the names of the persons claiming an interest in the property described herein, and are not knowledgeable of the heirs of Joaquin Chapa, neither Plaintiff nor Affiant are able to determine the whereabouts of such unknown person(s) and hence cannot locate them for service of process.

After citation was published, hundreds of defendants appeared in the suit either through an attorney or representing themselves. In addition, an attorney was appointed to represent any non-appearing unknown heirs.

In 2018, the trial court granted summary judgment for PlainsCapital "for full title and possession of an undivided 46.6% of the mineral interest in the 781.11 acres[.]". The judgment also

states that 363 named defendants as well as "any and all other unknown heirs of Joaquin Chapa and any and all other Persons Claiming an interest in the real property at issue take nothing and have no ownership in the mineral interest in the 781.11 acres[.]" Two of the defendants—Velma San Miguel and Alexis Rendon—appealed the summary judgment and the Fourth Court of Appeals reversed the judgment only as to the two appellants. *San Miguel v. PlainsCapital Bank*, No. 04-18-00450-CV, 2019 WL 2996975, at *6 (Tex. App.—San Antonio July 10, 2019, no pet.). After remand, PlainsCapital nonsuited its claims against San Miguel and Rendon, resulting in a final judgment against all other defendants.

## B. Underlying case

In 2022 and 2023, after the summary judgment in favor of PlainsCapital, 131 individuals claiming to be Chapa's heirs deeded their interest in the property to C.V.P.G. C.V.P.G. and the trustee then filed the underlying suit for trespass to try title against PlainsCapital.

PlainsCapital filed a Rule 91a motion asserting that res judicata barred the suit and that C.V.P.G., a trust, lacked standing. The trial court granted the motion and dismissed the suit, but we reversed that dismissal. *C.V.P.G. Family Tr. v. PlainsCapital Bank, Tr. of Guerra Mineral Tr.*, No. 08-23-00320-CV, 2024 WL 2445793, at *4 (Tex. App.—El Paso May 23, 2024, no pet.). We held that the trustee has standing to bring suit on behalf of the trust. *Id.* We also held that PlainsCapital was not entitled to a Rule 91a dismissal on its res judicata defense because dismissals under that rule can only be based on the plaintiff's petition and attachments. *Id.* at *6; Tex. R. Civ. P. 91a.6 ("the court . . . must decide the [Rule 91a] motion based solely on the pleading of the cause of action, together with any pleading exhibits"). Because Appellants' petition did not allege or attach a final judgment, one of the requirements of res judicata, a Rule 91a dismissal was error. We noted that "[r]es judicata is an affirmative defense best left for determination at the summary judgment stage because it requires proof of facts rarely alleged in a plaintiff's pleading. *Id.* at n. 7.

### C. Summary judgment pleadings and evidence

After remand, PlainsCapital filed a motion for summary judgment. In its motion, PlainsCapital argued that it was entitled to judgment as a matter of law based on its res judicata defense. It contended that the summary judgment in the 2016 case was a final judgment determining title of the property; that C.V.P.G. was in privity with the defendants in the 2016 case because it derived their purported interests from people claiming to be Chapa's heirs with an interest in the property; and that the subject matter of both cases was the same. PlainsCapital also moved for summary judgment on standing. It claimed that C.V.P.G. lacked standing because a trust is not an entity that may bring suit. Finally, PlainsCapital contended that neither C.V.P.G. nor the trustee had standing to assert a claim to the property because title had already been adjudicated in the 2016 case.

Foreseeing Appellants' claim that the prior judgment is void for lack of service, PlainsCapital asserted that service by publication in the 2016 case was valid and effective, pointing to the number of defendants who appeared in the suit and an attorney ad litem's representation of those who did not appear. In the alternative, PlainsCapital maintained that if there was a defect in service, it did not rise to a violation of due process because Chapa's heirs did not record anything in the Starr County property records to put others on notice of their claims.

As summary judgment evidence, PlainsCapital submitted the Zapata County heirship determination and a number of pleadings and orders from the 2016 case. Most important to its res judicata defense, PlainsCapital included as evidence the summary judgment in the 2016 case declaring that 363 named defendants as well as "any and all other unknown heirs of Joaquin Chapa and any and all other Persons Claiming an interest in the real property" have no ownership in the mineral interests of the property.

In its response, Appellants argued that because the identity and location of Chapa's heirs were ascertainable from the heirship determination, service by publication in the 2016 case was not proper and the judgment in that case is void. Appellants also denied that they are in privity with a party to the 2016 suit, claiming that C.V.P.G.'s predecessors in interest were the *known* heirs who were neither parties nor in privity with the *unknown* heirs who were parties to the 2016 suit. Finally, Appellants asserted that a trust has standing to file suit in its own name pursuant to § 114.087 of the Texas Property Code. In support of its arguments, Appellants submitted the heirship determination containing the names and addresses of Chapa's heirs; the deeds granting interests in the property to C.V.P.G.; and an abstract of title, identifying all of the deeds from which it claims title. Appellants, however, do not specify in its response which of the determined heirs deeded their interests to C.V.P.G. or which participated in the 2016 case.

Without stating its grounds, the trial court granted summary judgment for PlainsCapital. Appellants appeal the summary judgment challenging both grounds on which PlainsCapital moved. In issue one, Appellants argue that there is no final judgment adjudicating their interests because their predecessors-in-interest were not properly served with the 2016 case. In issue two, they argue that C.V.P.G. has standing to bring suit.

## II. ANALYSIS

### A. Standard of review

A party may move for traditional summary judgment when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Tex. R. Civ. P. 166a(h)(2). If the movant seeks summary judgment on its affirmative defense, he has the burden to conclusively establish the defense. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 593 (Tex. 2017) If the movant meets its burden, the burden then shifts to the nonmovant to produce

evidence that raises a genuine issue of material fact. *Draughon v. Johnson*, 631 S.W.3d 81, 87–88 (Tex. 2021).

We review a summary judgment de novo and "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). "When a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious." *Rogers v. Ricane Enter. Inc.*, 772 S.W.2d 76, 79 (Tex. 1989).

### B. Standing

Because standing is a component of subject matter jurisdiction, we address that issue first. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000) ("Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case."); *Rattray v. City of Brownsville*, 662 S.W.3d 860, 868 (Tex. 2023). ("The fundamental rule is that the court may not reach the merits if it finds a single valid basis to defeat jurisdiction."). PlainsCapital argues that C.V.P.G., a named plaintiff, lacks standing because a trust "is not a proper legal entity that may bring suit." PlainsCapital is correct that a trust is not a legal entity that can sue or be sued and that the proper party is the trustee. *Ray Malooly Tr. v. Juhl*, 186 S.W.3d 568, 570 (Tex. 2006) (per curiam). However, that is an issue of capacity, not standing. "A plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661–62 (Tex. 1996). Because standing and capacity are distinct requirements to bring suit, a party can have one but not the other. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005) (explaining that a minor who has suffered an injury has standing, but not capacity to sue). A

6

challenge to a trust's ability to sue or be sued is a challenge to the trust's capacity and must be made by a verified denial or it is waived. *Ray Malooly Tr.*, 186 S.W.3d at 571; Tex. R. Civ. P. 93(1), (2).

PlainsCapital never challenged C.V.P.G.'s capacity by filing a verified denial and therefore waived any challenge to capacity. It challenged only standing. "In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154 (Tex. 2012). Because C.V.P.G. and PlainsCapital both asserted an ownership interest in the same property, C.V.P.G. alleged a concrete injury and real controversy. PlainsCapital did not argue or present any evidence to the contrary. We sustain C.V.P.G.'s first issue.

PlainsCapital also argues that neither C.V.P.G. nor the Trustee have standing because the final judgment in the 2016 case bars further litigation. As we noted in the first appeal, this argument pertains to the res judicata defense and not whether the Appellants have standing. *C.V.P.G.*, 2024 WL 2445793 at *4 n.4 ("a plaintiff does not lack standing simply because some other legal principle may prevent it from prevailing on the merits.") (quoting *Texas Medicine Res., LLP v. Molina Healthcare of Texas, Inc.*, 659 S.W.3d 424, 440 (Tex. 2023) and *Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 696 (Tex. 2021)). We discuss this argument in the next section and not in relation to standing.

### C. Res Judicata

Res judicata bars claims that have already been litigated or that "arise out of the same subject matter and that could have been litigated in the prior action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). "The doctrine seeks to bring an end to litigation, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery." *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). The

7

defense of res judicata consists of three elements: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Amstadt*, 919 S.W.2d at 652. Appellants challenge the first two elements—(1) the existence of a final judgment and (2) privity with the parties to the prior suit.

### (1)  Final judgment

In support of its motion for summary judgment, PlainsCapital submitted the petition and final judgment in the 2016 case. The judgment was "in favor of [PlainsCapital] for full title and possession of an undivided 46.6% of the mineral interest in the 781.11 acres" and states that the 363 defendants who appeared as well as "any and all other unknown heirs of Joaquin Chapa and any and all other Persons claiming an interest in the real property . . . take nothing and they have no ownership in the mineral interest in the 781.11 acres[.]" The order further states that it "is a final appealable judgment that disposes of all parties and all claims." On appeal, that judgment was reversed only as to the two defendants that appealed it but was a final judgment as to all other defendants.

Appellants do not dispute that the judgment is, on its face, a final one entered by a court of competent jurisdiction. Instead, they collaterally attack the judgment, asserting that service by publication violated the heirs' due process rights resulting in a void judgment that is not a binding final judgment for the purposes of res judicata. *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 273 (Tex. 2012) ("[A] judgment may [] be challenged through a collateral attack when a failure to establish personal jurisdiction violates due process.").

### (a)  Parties' burdens of proof

Before discussing Appellants' claims that the prior order in the 2016 case was void, we must address the parties' burdens of proof. "When attacked collaterally, a judgment is presumed

valid. But that presumption disappears when the record establishes a jurisdictional defect." *PNS Stores, Inc.*, 379 S.W.3d at 273. The parties dispute who has the burden to rebut the presumption of validity. Appellants claim that PlainsCapital, as part of its summary judgment burden to conclusively prove its res judicata defense, had to also show that the final judgment was valid. Conversely, PlainsCapital argues that it was Appellants' burden to defeat its res judicata defense by showing a genuine issue of fact whether the judgment was void. We agree with PlainsCapital.

To establish the existence of a final judgment for res judicata purposes, a satisfies its burden by submitting a prior judgment that shows that it disposed of all claims. *Yzaguirre v. Medrano*, 786 S.W.2d 88, 90 (Tex. App.—San Antonio 1990, no writ). The burden then shifts to the nonmovant to raise a fact issue to avoid summary judgment. *Id.* at 91 (citing *Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 937 (Tex. 1972); *see also Freeman v. Formosa Mgmt., L.L.C.*, No. 01-15-00907-CV, 2016 WL 6803234, at *4 (Tex. App.—Houston [1st Dist.] Nov. 17, 2016, pet. denied) (mem. op.) (holding that in summary judgment proceedings, a plaintiff contesting the res judicata defense of his collateral attack bore the burden of demonstrating that the prior judgment was void); *Dardari v. Tex. Commerce Bank Nat. Ass'n*, 961 S.W.2d 466, 470 (Tex. App.—Houston [1st Dist.] 1997, no pet.) (same); *cf. Gill*, 688 S.W.3d at 871 (holding that once a defendant met its summary judgment burden of showing that a suit to challenge a foreclosure proceeding was filed past the statute of limitations, the burden shifted to the plaintiff "to present evidence raising a fact issue whether the foreclosure judgment was, in fact, void.").

PlainsCapital met its burden of establishing the existence of a final judgment. We now turn to whether Appellants met their burden of showing a genuine issue of material fact whether that judgment was void.

9

## (b) Service by publication

Due process "requires that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180, 188–89 (Tex. 2022) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)); U.S. Const. amend. XIV, § 1; *see also* Tex. Const. art. I, § 19. A judgment entered without proper notice is void. *In re E.R.*, 385 S.W.3d 552, 566 (Tex. 2012); Tex. R. Civ. P. 124 ("In no case shall judgment be rendered against any defendant unless upon service, or acceptance or waiver of process, or upon an appearance by the defendant, as prescribed in these rules[.]").

Typically, to provide notice of a lawsuit, citation and the petition must be personally served on the defendant. Tex. R. Civ. P. 106(a) (unless otherwise directed, citation must be delivered to the defendant either in person or by certified mail). However, service of citation by publication is allowed when "it is not reasonably possible or practicable to give more adequate warning." *In re E.R.*, 385 S.W.3d 552, 566 (Tex. 2012) (quoting *Mullane*, 339 U.S. at 317)); Tex. R. Civ. P. 109 (providing for service by publication when the residence of a defendant is unknown). For service by publication to satisfy due process, the plaintiff must have made a diligent search for the defendant. *E.R.*, 385 S.W.3d at 564; *Mitchell*, 649 S.W.3d 189; Tex. R. Civ. P. 109. "A diligent search must include inquiries that someone who really wants to find the defendant would make." *E.R.*, 385 S.W.3d at 565. A plaintiff cannot escape the duty to diligently search for a defendant by claiming that the defendant is unknown. In that case, if the defendant is "reasonably identifiable" or can be identified by a public record, constructive notice of service by publication on an unknown defendant does not satisfy due process. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983).

### c. Appellants' evidence that the prior judgment was void

The names and addresses of 220 of Chapa's heirs were in a public record, namely the 2005 judgment declaring heirship entered by the 49th District Court of Zapata County, Texas. PlainsCapital argues that it was not required to search Zapata County records because the property is located in Starr County. It cites to numerous cases for the well-known principle that a purchaser has constructive notice of interests in property only when those interests are recorded in the county where the property is located. But a search of property records that one must make to be a bona-fide purchaser is different than a search one must make to find and serve defendants with citation. A diligent search for the purposes of service of citation requires all efforts one would make if he really wanted to find the defendant. *E.R.*, 385 S.W.3d at 565. Such a search is not limited to records in a particular county just because the lawsuit involves real property in that county. *See, e.g. Malloy v. Blau*, 698 S.W.2d 255, 257–58 (Tex. App.—Amarillo 1985, writ ref'd n.r.e.) (holding in a case concerning property in Lipscomb County that there was a fact question about whether appellee used due diligence to find unknown heirs when that information was ascertainable from probate proceedings in Tulsa County, Oklahoma). PlainsCapital further argues that the Zapata County order did not put it on notice of the heirs' claims to the property because it did "not determine any ownership interest in any real property" and was "at best, a family tree tracing the purported lineage of Joaquin Chapa." But, the issue here is not whether PlainsCapital had notice that Chapa's heirs had an interest in the property. It was obviously aware of the interest of the heirs and for that reason sued them. The issue is instead whether there is evidence that PlainsCapital failed to diligently search for the identities and addresses of the heirs.

Not only was the heirship determination *discoverable* with a diligent search, but it was also *discovered*. In two motions filed in the 2016 case, PlainsCapital stated that it learned that a court in Zapata County made a determination of heirship. Nonetheless, in those motions, PlainsCapital

sought to remain willfully ignorant of the identities and addresses of heirs. In one motion, it asked the trial court to direct the attorney appointed to represent the unknown heirs *not* to "undertake to discover through genealogies or otherwise, the names of unknown heirs who are not now parties to the suit." In the other motion, PlainsCapital objected to the consideration of the Zapata County heirship determination "for any purpose" on the ground that PlainsCapital was not a party to the heirship proceeding. Despite learning of the heirship determination, PlainsCapital's attorney repeated in a second affidavit, filed after these motions, that neither he nor the Bank was "knowledgeable of the heirs of Joaquin Chapa" or "able to determine the whereabouts of such unknown person(s)."

However, a public record containing the names and addresses of Chapa's heirs is only evidence that PlainsCapital did not make a diligent search for those heirs listed in the determination. Appellants also had to show that its predecessors-in-interest were among those 220 heirs whose names and addresses were included in the heirship determination that was public record.

Evidence that due process may have been violated in relation to one defendant is not necessarily evidence that it was violated as to a different one. In *Mitchell* and in *Gill v. Hill*, the supreme court considered the validity of service by publication on two different defendants in the same foreclosure suit. *Mitchell*, 649 S.W.3d at 183-84; *Gill v. Hill*, 688 S.W.3d 863, 869 (Tex. 2024), *cert. denied*, 145 S. Ct. 274 (2024). In *Mitchell*, the plaintiffs submitted recorded deed records that included the name and address of the property owner. *Mitchell*, 649 S.W.3d at 184. The court held that the deeds in a public record were evidence that taxing authorities did not conduct the required diligent search before serving the defendant by publication. *Id.* at 193 ("And the recorded warranty deeds bearing Elizabeth's post office box address reveal that, as to her, the Taxing Authorities either did not complete the diligent records search they claimed or did not act

12

on its results."). In *Gill*, unlike in *Mitchell*, the plaintiffs did not present evidence that their predecessor-in-interest's name and address were in a public record. *Gill*, 688 S.W.3d at 871. They urged instead that the court's previous "conclusion that notice was constitutionally inadequate for one of the property-owner defendants in *Mitchell* allows [the court] to conclude it was so for others." *Id*. The court rejected their argument and held that the plaintiffs in *Gill* had to present evidence to raise their own issue of fact and could not rely on a finding that a different defendant's due process rights were violated. The court stated "whether due process was afforded to a particular defendant is an individualized inquiry, and the facts that made notice by posting insufficient for the petitioners' predecessors in *Mitchell* do not necessarily make notice by posting improper for *Gill*." *Id*. Similarly, in this case, the due process issue turns on whether there is evidence that PlainsCapital failed to make a diligent search for Chapa's heirs, specifically, whether those heirs' names and addresses were in a public record.

In its response to the motion for summary judgment, Appellants did not discuss their individual predecessors-in-interest and whether their identities and addresses were part of the heirship determination in the public record. From our own review of the record, it appears that most of the people that granted their interests to C.V.P.G. were *not* determined heirs.[2] For these undetermined heirs, the heirship determination is not evidence that their identity and address were ascertainable. Appellants submitted no evidence to support their assertion that PlainsCapital could have located and served heirs who were not listed as determined heirs in the order filed in Zapata County.

---

[2] At oral argument, Appellants claimed that this is because many of people who were determined heirs have since died and it was their heirs that granted their interest to C.V.P.G. The record contains no evidence, or even any allegation, that any of C.V.P.G.'s predecessors-in-interest are the heirs to Chapa's determined heirs.

Even for C.V.P.G.'s predecessors-in-interest who *were* included in the heirship determination (and who were therefore, ascertainable), Appellants could not challenge the validity of service by publication if those heirs were among the hundreds who filed answers or made appearances in the 2016 case. Entering an appearance in open court has "the same force and effect as if the citation had been duly issued and served as provided by law. Tex. R. Civ. P. 120. Likewise, filing an answer "dispense[s] with the necessity for the issuance or service of citation[.]" Tex. R. Civ. P. 121. For the hundreds of Chapa heirs who appeared in or answered the 2016 case, whether service by publication was proper is irrelevant. By participating in that suit, they waived any complaint about service.[3] *Parr v. First State Bank of San Diego*, 507 S.W.2d 579, 581 (Tex. App.— San Antonio 1974, no writ) (complaint that there was no evidence to support substituted service was "immaterial" because the defendant "waived the necessity for service and any defects in the citation" by appearing and filing an answer). In their summary judgment response, Appellants, however, failed to discuss whether any of C.V.P.G.'s predecessors-in-interest appeared in or filed an answer to the 2016 suit. Our own review of the evidence reveals that many of them participated in the 2016 suit, leaving Appellants with no ground to challenge service of process.

In summary, to show that a genuine issue of material fact exists, Appellants had to show that the people who granted their interests to C.V.P.G. (1) could be identified and located by the Zapata County heirship determination and who (2) had not appeared or filed an answer in the 2016

---

[3] The appearance and filings of the attorney appointed to represent non-appearing defendants served by publication did not waive any constitutional challenge to service by process. *Guardianship of Fairley*, 650 S.W.3d 372, 388 (Tex. 2022) (explaining that the appointed attorney ad litem's appearance could waive "complaints about the method of personal service, it was not a waiver of personal service of citation[.]");*Velasco v. Ayala*, 312 S.W.3d 783, 799 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (when the court does not acquire personal jurisdiction over a defendant through service, "the subsequent actions of the trial court in authorizing the ad litem to represent her interests at trial, and everything that flowed therefrom, are likewise a nullity."); *Interest of T.M.E.*, 565 S.W.3d 383, 395 (Tex. App.— Texarkana 2018, no pet.) ("To hold that a parent—who never received service of process—entered a general appearance through his court-appointed counsel—whom he never talked to—and thereby made a general appearance that negated the need to show service of process would create a bad precedent.").

14

case. Simply referring to the heirship determination, which lists hundreds of names, with no discussion about which heirs granted their interests to C.V.P.G. and which of those waived service of process, was not sufficient. Appellants were required to point to specific evidence that raises a fact issue. *Doherty v. Old Place, Inc.*, 316 S.W.3d 840, 844 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (Appellant's "broad reference" to summary judgment exhibits "without further explanation or argument, does not provide this Court with a clear indication about the evidence upon which he is relying."); *Velasquez v. Waste Connections, Inc.*, 169 S.W.3d 432, 438 (Tex. App.—El Paso 2005, no pet.) (same); *DeGrate v. Executive Imprints, Inc.*, 261 S.W.3d 402, 408 (Tex. App.—Tyler 2008, no pet.) ("Referencing attached documents only generally does not relieve a respondent of directing the trial court to where in such documents the issues set forth in the response are raised."). It is not our duty, nor was the trial court's, to sift through all of the evidence to try to ascertain who among the people who granted their interests to C.V.P.G. should have been personally served and who waived service of process.

### (2) Privity

Appellants also challenge the second element of res judicata which requires that the parties to the second suit either be the same as or in privity with the parties to the first suit. "Generally people are not bound by a judgment in a suit to which they were not parties." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996) (citing Tex. Civ. Prac. & Rem. Code § 37.006(a)). However, non-parties are also barred by res judicata if they were in privity with a party to the prior suit. *Id.* at 652–63. Nonparties are in privity with parties if: "(1) they can control an action even if they are not parties to it; (2) their interests can be represented by a party to the action; or (3) they can be successors in interest, deriving their claims through a party to the prior action." *Id*. at 653.

Appellants were not parties to the 2016 suit. PlainsCapital argues that C.V.P.G. is in privity with the parties to that suit as a matter of law because it claims to have derived its interests from

Chapa's heirs. Appellants, on the other hand, argue that C.V.P.G. is not in privity with the parties in the 2016 case because its predecessors-in-interest were *known* heirs (heirs that had been determined in Zapata County) and the known heirs were neither parties nor in privity with the *unknown* heirs who were parties in the 2016 case.

Whether a party is known or unknown implicates different manners of service, as discussed above. Whether the distinction between unknown and known heirs also matters for privity purposes is not a question we need to reach today. The summary judgment in the 2016 case was against both known and unknown heirs. Although the petition did not name any known heirs, the final judgment did. In addition to the unknown heirs, the judgment was against 363 named heirs. For those heirs who are named in the prior judgment and who thereafter transferred their purported interests to C.V.P.G., C.V.P.G. is in privity with them regardless of whether PlainsCapital initially classified them as an unknown heir. As for C.V.P.G.'s predecessors-in-interest who were not named in the prior final judgment, C.V.P.G. only pointed to the heirship determination as evidence that they were known, rather than unknown heirs. However, as explained above, many of the people who granted their interests to C.V.P.G. were not listed as heirs in the heirship determination and so were unknown heirs. Consequently, even according to Appellants' evidence, C.V.P.G. is in privity with unknown heirs as well.

Appellants failed to meet their burden of producing evidence creating a genuine issue of material fact that they were not in privity with the defendants in the 2016 case.

PlainsCapital met its summary judgment burden of establishing its affirmative defense of res judicata by presenting evidence of a final judgment against 363 heirs and all other unknown heirs, some of whom later transferred their purported interests to C.V.P.G. Appellants failed to meet their burden of showing a genuine issue of material fact that the prior judgment is void or

that C.V.P.G. is not in privity with the parties to the 2016 case. We overrule Appellants' second issue.

## III. Conclusion

The trial court's summary judgment in favor of PlainsCapital is affirmed.

MARIA SALAS MENDOZA, Chief Justice

April 15, 2026

Before Salas Mendoza, C.J., Palafox and Soto, JJ.